CASE 92.—PROSECUTION AGAINST JOHN HOFFMAN BY
    COMMONWEALTH FOR MURDER.—Oct. 6, 1909.

# Hoffman v. Commonwealth

Appeal from Estill Circuit Court.

J. B. WHITE, Special Judge.

Defendant convicted and appeals.—Affirmed.

1. Homicide—Murder—Evidence.—Evidence held to sustain a
   conviction of murder in the first degree.
2. Criminal Law—Joint Defendants—Separate Trial.—Under Cr.
   Code Prac. Sec. 237, providing that, if two or more defend-
   ants are jointly indicted for felony, and defendant entitled
   to a separate trial, it is the mandatory duty of the court to
   grant a separate trial when demanded by one of several joint
   defendants.
3. Criminal Law—Codefendants—Severance by State.—Cr. Code,
   Sec. 237, though giving to a joint defendant the absolute
   right to a separate trial, does not confer on him the right to
   a joint trial, nor does such right exist at common law; the
   court being authorized, at the instance of the Common-
   wealth, or, where justice requires, on its own motion, to order
   a severance without application by either party.
4. Homicide—Evidence—Threats by Third Person.—Where there
   was evidence that a threat by defendant's wife that, if
   decedent did not release defendants' son, decedant's
   wife would be a widow before morning, was made in defend-
   ant's hearing but a few minutes before defendant inter-
   vened in the quarrel which ended in his killing decedent,
   such threat was admissible against him.
5. Homicide—Evidence—Declarations of Third Persons.—Where,
   in a prosecution for homicide, defendant claimed that prior
   to the difficulty some persons had thrown rocks at him, evi-
   dence of F. that two of her sons, who might otherwise have
   been supposed to have rocked defendant, left her house a few
   minutes before the shooting, saying they were going to get
   some fodder for a mule, was inadmissible.

Hoffman v. Commonwealth.

6. Homicide—Appeal—Prejudice.—Such testimony was not preju-
dicial to defendant, in view of the witness' subsequent testi-
mony that her sons had passed through the yard a few min-
utes later with the fodder.
7. Criminal   Law—Misconduct   of   Attorney—Appeal—Presump-
tion.—Where an objection to a statement by counsel for the
commonwealth was sustained by the court, it would be pre-
sumed on appeal that the court at the time admonished the
jury not to consider the same.
8. Criminal   Law—Continuance—Affidavit—Use   as   Evidence.—
Where an affidavit for a continuance for absence of certain
witnesses did not allege the facts to which it was claimed
they would testify, if present, accused's mere belief that, if
present, they would give beneficial testimony, did not author-
ize the reading of what was said in the affidavit with respect
to them.

GOURLEY, REDWINE & GOURLEY for appellant.


CONCLUSION.

The record as a whole shows that appellant was imposed upon
and mistreated for a long time before the killing, and that on that
night his child was taken and fastened up by Gross, and when
the old man started out in the dark to bring his child home he
is stoned by unknown persons, and then Gross goes and gets a
gun and confronts him and is in the act of shooting him when
appellant fired the shot which killed him.   It seems to us that
this is a clear case of self-defense.   Appellant was forced to try
in the absence of his witnesses, and even denied the right to read
the affidavit that had been admitted as the evidence of Jessie
Isaacs and Frank Rimer. In the light of these rulings and the
unfair advantage taken by the attorney for the Commonwealth
in his argument to the jury is it any wonder that the jury ren-
dered a verdict that is grossly excessive and altogether in con-
flict with the facts in the record.   If this case is not a case of
justifiable homicide, as we contend it is, certainly it will not be
contended that the facts presented could in any view of the case
authorize a verdict for more than manslaughter.

We most respectfully insist that appellant has not had a fair
trial, and that the cause of justice and right requires a reversal
of this case.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR,
Assistant Attorney General, for Commonwealth.

POINTS AND AUTHORITIES.

1. The court did not err in overruling appellant's objections to a seperate trial. Sizemore v. Commonwealth, 108 S. W. 254; Currans Case (1850) 7 Gratt. (Va.)., 619; Constitution, Section 233; 12 Cyc. 506; 19 Encyc Pleading & Practice, page 525; Clark on Criminal Procedure, Section 154; Barnes v. Commonwealth, 92 Va. 794; State v. Roberts, 50 W. Va. 422.

2. The trial court did not err to appellant's prejudice in admitting incompetent and irrelevant evidence offered by the Commonwealth over the objections of appellant. Miller v. Commonwealth, 78 Ky. 16; Howard v. Commonwealth, 110 Ky. 356; Powers v. Commonwealth, 110 Ky. 386; Hall v. Commonwealth, 31 R. 64.

3. There was no misconduct of the Commonwealth's Attorney in his argument to the jury, and no error was committed by the court therein, as the bill of exceptions shows. Bill of Exceptions, page 28; Housman v. Commonwealth, 128 Ky. 818; Hinton v. Commonwealth, decided Sept. 23, 1909.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, John Hoffman, with one shot from a musket loaded with leaden slugs, killed Simon Gross and Bert Flinchem. The double homicide occurred at night near the homes of all the parties, in Estill county. Appellant and his wife, Ritta Hoffman, were jointly indicted for the killing of Gross; the crime charged being murder. Appellant, at the instance of the Commonwealth's Attorney, over his objection, had a separate trial, which resulted in his conviction; the jury returning a verdict finding him guilty of murder and fixing his punishment at confinement in the penitentiary for life, upon which verdict judgment was duly entered. Appellant was refused a new trial in the circuit court, and by this appeal seeks a reversal of the judgment of conviction.

It does not appear from the record whether appellant or his wife was indicted for killing Flinchem, or

whether she has been tried under the joint indictment charging her and appellant with the murder of Gross. Appellant lived near and was on friendly terms with both Gross and Flinchem, had worked a good deal for the former, and was at the time of the killing in the employ of the latter as a hauler of railroad ties. According to appellant's own testimony, about a month before the homicide his house was rocked, and this indignity was followed down to the time of the homicide by repeated throwing of rocks at his person when he would be returning home at night after his work. The persons who thus assaulted his house and person were unknown to appellant, but when the rocks were thrown at his house he saw two men running from the premises, one of whom he thought was Gross; but, upon mentioning the matter to Gross the next day, the latter denied that he rocked his house, and claimed to know nothing about it. Appellant also testified that he informed Bert Flinchem of the rock throwing, and Flinchem gave him some powder and cartridges, and advised him to load his musket and shoot the wrongdoers, if again rocked. Whereupon appellant made slugs of some of the cartridge balls, and with them and the powder loaded his musket. According to all the evidence, on the day of the homicide, and shortly before its occurrence, appellant's wife sent their son, Algin Hoffman, a boy 12 years of age, to the house of Gross for the return of some coal oil which Mrs. Gross had borrowed of her. The boy failing to return to his own home, his mother about night went to Gross' house after him, but upon arriving there claimed to have discovered that Gross had the boy in his house and refused to let him go home. Thereupon Mrs. Hoffman became very angry, and got into an altercation of words with Gross and his wife,

during which she said to Mrs. Gross that, if her husband did not release Algin and permit him to return with her, she (Mrs. Gross) would be a widow before morning. About that time appellant appeared on the scene, and at once demanded that Gross release his son and let him go home. This demand was ignored by Gross. At any rate, the boy did not leave his house. Mrs. Gross testified, however, that her husband did not detain appellant's son, but that the boy refused to leave the house, and gave as a reason therefor that he was afraid, if he returned home, his father would whip him. Finding that his demand for his son was not complied with, appellant claimed to have directed his wife to go home, and that he said to her he "would get him (meaning his son) if he had to remain until morning for that purpose."

Mrs. Gross testified that appellant, after ordering his wife home, threatened to take the life of her husband, saying, if Gross did not release his son, he would shoot him; that, when this threat was made by appellant, her husband went to the house of David Flinchem, the father of Bert Flinchem, and there got a gun, with which, and in company with Bert Flinchem, he was returning to his own home when he was met in the road by appellant, who then fired the shot, which killed both Gross and Finchem.

Appellant admitted that while at Gross' home he had his gun with him, but said, when he heard the quarreling between his wife and Gross, he started toward them without the gun, but before getting to them rocks were thrown at him by persons whom he could not see; that one of the rocks struck and seriously wounded his leg, which caused him to return to his home and get the gun for his protection. His version of the killing was that, after directing his wife to go

home, he again demanded of Gross the release of his son, at the same time telling him, if the boy had done anything that was wrong, he (appellant) would whip him, or, if Gross wished it, take him to Irvine next day for trial.   This proposition doubtless had reference to the charge, later brought out by the evidence, that appellant's son had that day, or a short time previously, taken some corn (roasting ears) from the field of Gross.   It was, however, claimed by appellant that Gross, instead of acceding to the proposition made him, threatened to kill appellant, and went at once to David Flinchem's and got a gun, with which he was returning to his own home in company with another person, when they met appellant, who, seeing Gross had a gun pointed toward him, told them to stand back, that he was going to shoot; but, as they continued to advance, he fired the shot which resulted in their death.

One of the younger Flinchems, standing a short distance from Gross and Bert Flinchem when they were killed, testified that Gross had his gun on his shoulder when appellant fired at him, and that he (the witness), upon seeing Gross and Bert Flinchem fall, shot twice at appellant with a pistol, and that the latter thereupon fled.   Other witnesses testified, however, that Gross did not have the gun at his shoulder or pointed at appellant.   When arrested by a deputy sheriff, appellant confessed he killed Gross, and that he intended to do so, believing it necessary to save his own life, for Gross was then pointing a gun at him and about to shoot, but he (appellant) did not intend to shoot Bert Flinchem, or know that he was with Gross.

It is proper to say that Mrs. Gross was strongly corroborated as to what occurred before and at the

time of the shooting, for at least three other witnesses introduced by the commonwealth heard appellant say to Gross, before the shooting, that if he did not let his son come home he would shoot or kill him, and no witness, other than appellant, heard Gross say he would not release the boy, or testified that he threatened appellant's life. However, the evidence all went to the jury, and we can not say that it was not sufficient to justify the verdict returned. Although appellant entertained the belief, or it reasonably appeared to him, that his son was being wrongfully detained by Gross, that fact did not of itself excuse his taking of the life of Gross. If it should have been considered in mitigation of his punishment, who can say that it was not considered for that purpose by the jury, and that but for it the death penalty would have been the punishment inflicted, instead of imprisonment in the penitentiary for life?

It is insisted for appellant that numerous. errors were committed by the trial court which entitled him to a reversal of the judgment complained of. One of the alleged errors consisted in the court's compelling appellant to undergo a separate trial in the face of his objection thereto. The order, which shows the ruling of the court referred to and appellant's objection to the same, also shows that the defendant, Ritta Hoffman, was "before the court, but not present." It does not appear from the record why appellant's wife was not present when the case was called for trial, or where she was. She may have been on bond and sick, in jail, or in the courthouse yard, or intentionally absenting herself, in the hope that it would obtain appellant a continuance of the case even after the court had refused him a continuance upon his affidavit

based on other grounds. The reasons for her absence from the court are not material.

The question of whether appellant should have had a separate trial at the instance of the Commonwealth's Attorney was a matter that rested in the discretion of the court. Section 237, Criminal Code of Practice, provides:

"If two or more defendants be jointly indicted for a felony, any defendant is entitled to a separate trial."

The language of this section is mandatory as to the right of a defendant, jointly indicted with another or others for a felony, to a separate trial. The court is without power to refuse it to him when demanded. The section is, however, silent as to the right of the commonwealth to separately try one of several defendants jointly indicted for a felony. But, in the absence of any statute denying the commonwealth the right to try separately one of several defendants so indicted, there is, in our opinion, no obstacle in the way of its exercise of such right. It must not be overlooked that at the common law the commonwealth, and not the defendant, in case of joint indictments, had the right of election, subject to the discretion of the court, whether to try defendants jointly or separately. The Code only changes the common law to the extent of also allowing a defendant, in cases of joint indictment for a felony, the right to demand and have a separate trial, but does not take away from the commonwealth the right to separately try each of several defendants, jointly indicted for a felony. In other words, the common law, in respect to this right of the commonwealth, has not been abrogated by the Code. It will further be observed that, although section 237, Cr. Code Prac., gives to a defend-

ant, jointly indicted with. another or others, the right of separate trial, it does not confer upon him the right to a joint trial, nor does such right exist at the common law.

It follows, therefore, that a severance may be ordered at the instance of the commonwealth, as of the defendant; and, where justice so requires, the court may order separate trials of its own motion, without application therefor by either party. 19 Encyc. Pleading & Practice, 527; 12 Cyc. 506; Clark's Criminal Procedure, Sec. 154; Barnes v. Commonwealth, 92 Va. 794, 23 S. E. 784; Gathings v. State, 44 Miss. 343; State v. Prater, 52 W. Va. 132, 43 S. E. 230; State v. Roberts, 50 W. Va. 422, 40 S. E. 484; State v. Thaden, 43 Minn. 325, 45 N. W. 614; Curren's Case, 7 Grat. (Va.) 619.

If right in the above conclusion, it follows that the court above did not err in ordering that appellant have a separate trial.

Appellant complains that the trial court also erred in admitting the testimony of Mrs. Gross and others regarding the statement made by appellant's wife to her, just before the killing, that if Gross did not release her son she (Mrs. Gross) would be a widow before morning. The statement in question was, it is claimed, incompetent; it being contended by counsel for appellant it was not proved that appellant was present or heard it. A careful reading of the evidence convinces us that this objection is not well taken. Mrs. Gross said the threat was made a few minutes before appellant intervened in the quarrel; but several other witnesses testified that it was made when or about the time appellant appeared on the scene, and the latter failed to deny that it was made in his presence or hearing. We therefore conclude that

there was evidence which tended to show that the threat was made by his wife in his hearing. Consequently we can not say its admission was improper.

We agree with appellant's counsel that the court should not have allowed Mrs. Ellen Flinchem to testify that two of her sons, who might otherwise have been supposed to have rocked appellant that night, left her house, a few minutes before the shooting, saying they were going to get some fodder for a mule. But her testimony as to what they said was not prejudicial to appellant, as she further stated that her sons passed through the yard a few minutes later with the fodder.

Appellant's complaint as to what was said by the commonwealth's attorney in argument is not well founded, for the record shows that the objection made by his counsel to the statement was sustained by the court, and we must take it for granted that the court at the time admonished the jury not to consider the excluded statement of the commonwealth's attorney.

The court did not err in excluding from the jury the testimony of Jesse Isaacs and Frank Hymer, contained in appellant's affidavit for a continuance. Statements attributed by the affidavit to three other absent witnesses were read as their depositions. But, as the affidavit did not set forth the alleged facts to which Isaacs and Hymer would testify, the mere belief that they would, if present, give beneficial testimony in his behalf, did not authorize the reading of what was said in the affidavit with respect to them.

The instructions are not open to the objections made to them by appellant's counsel. The instruction as to self-defense, as well as those relating to all other aspects of the case, are such as have repeatedly been approved by this court, and as a whole gave the jury all the law of the case.

Finding no cause for disagreeing with any material ruling of the trial court, the judgment is affirmed.