## JOHNSON v. STATE
(No. 1083; Decided Dec. 30, 1922; 211 Pac. 484)

Criminal Law—Separate Trials on Joint Indictment for Felony—Misconduct of Prosecuting Attorney—Opening Statement of Prosecution—Prosecuting Officer as Witness—Offer of Proof—Selection of Jury—Sufficiency of Evidence—Open Venire—Qualification of Jurors.

1. Section 7534 C. S. 1920 requiring separate trials for persons jointly indicted for a felony, if either shall apply therefor, also authorizes separate trials on motion of the prosecution subject to the approval of the court.

2. While it is the duty of the prosecuting attorney in criminal cases to outline in his opening statement to the jury in a concise manner what he expects to prove and to confine himself to facts and circumstances that will be competent evidence, his failure to introduce evidence mentioned in such statement, or even if some portion of it might be incompetent, if he acts in good faith and does not use abusive, inflamatory or scurrilous language toward defendant, does not constitute error.

3. County and prosecuting attorneys should refrain from acting as witnesses in criminal prosecutions except to prove facts coming under their personal observation that cannot be proven by other witnesses without great expense or inconvenience.

4. In a homicide case prosecuted on the theory that defendant and the family of deceased were enemies of long standing; had engaged in quarrels, litigation and an exchange of shots at different times; that defendant and two other men had shot into the ranch house of deceased on the

night of August 21st, seriously wounding deceased which resulted in her death within a few days thereafter; the defense contending that defendant and the two other men in question were not near the home of deceased that night and offering evidence tending to prove an alibi, it was error for the trial court to deny defendant's offer of proof of an all night quarrel between deceased and her husband and another man living at the ranch on August 20th, that several shots were heard at or near the ranch that night, also proof of the existence of adulterous conduct and relations between deceased and another for a considerable period prior to her death, and other facts and circumstances showing jealousy and anger on the part of the husband of deceased,—all of which were material to the defense.

5. Where a number of jurors, summoned on open venire, were examined collectively as to their qualifications to serve, and whether their names appeared on the last assessment roll, none answering in the negative, all having, in fact, paid taxes for the year prior, two of whom were thereafter drawn and accepted in the trial of a homicide case without challenge, *held* insufficient to show prejudice to defendant's rights.

6. Courts possess inherent power to cause an open venire to issue for the purpose of completing jury after exhausting the names from the jury boxes numbered 3 and 4.

7. The examination of jurors collectively as to their qualifications to serve should be discouraged, especially in capital cases, there being a likelihood of a lack of understanding, on the part of one or more of them, of the questions asked and of failure on the part of the prosecutor to realize that answers have not been made to all questions.

8. A verdict of guilty in a homicide case apparently predicated upon the theory that a volley of shots fired by defendant and others into a ranch house seriously wounding deceased and causing her death within a few days thereafter, *held* not sustained by the evidence in view of the facts and circumstances of the case as shown by the entire record.

ERROR to the District Court, Fremont County; HON. RALPH KIMBALL, Judge.

Henry V. Johnson was convicted of murder in the first degree without capital punishment and prosecutes error. The material facts are stated in the opinion.

*N. R. Greenfield, John Dillon* and *P. B. Coolidge,* for plaintiff in error.

We take it that the Supreme Court will consider the entire record in a case of this character, even though many of the objections and exceptions were not incorporated in the motion for new trial, in view of the following cases: Seng v. State, 20 Wyo. 222; Ohama v. State, 24 Wyo. 513; Cirej v. State, 24 Wyo. 507; Parker v. State, 24 Wyo. 491. The opening statement of the prosecutor was highly prejudicial to defendant, as was the statement of the special prosecutor, in that some of the facts there stated were incompetent and inadmissible in evidence, and if admissible for any purpose, were untruthful, all of which are highly prejudicial to defendant, and upon the whole were of such an abusive, inflamatory, sinister, scurrilous, reckless, demagogic, unjust and generally uncalled for, and of such objectionable character as to constitute reversible error. (Tucker v. Hanniker, 41 N. H. 317; Brown v. Swineford, 44 Wis. 232; Mitchum v. State, 11 Ga. 615; State v. Carter, 8 Wash. 272, 36 Pac. 29; Hall v. United States, 150 U. S. 76; Williams v. U. S. 168 U. S. 382; Brown v. State, 103 Ind. 133, 2 N. E. 296; Thompson on Trials (2nd Ed.) Vol. 1, Ch. 10.) The evidence was insufficient to support a verdict of guilty against defendant, being wholly circumstantial and failing to connect defendant with the offense. The court erred in permitting evidence of an alleged shooting affair which had occurred between Wales and defendant in 1912, or eight years before the killing of Nancy Wales. (State v. Jones, 191 Pac. 1075 (Wyo.); 16 C. J. 586; Underhill on Crim. Evi. 87; Baxter v. State, 110 N. E. 456; Paulson v. State, 94 N. W. 771; Farris v. People, 129 Ill. 541, 4 L. R. A. 582, 21 N. E. 821; 2 Bishop's New Crim. Proc. 1124; People v. Molineux, 168 N. Y. 264, 62 L. R. A. 193 (see 165 page note in 62 L. R. A. 193 covering every phase of this proposition.) The court erred in failing to instruct the jury as to certain phases of the evidence, even though such instruction was not requested. (People v. Montgomery, 176 N. Y. 219, 68· N.

E. 258; State v. Freeman, 49 N. C. 5; Hennesey v. State, 23 Tex. App. 5 S. W. 215; Burke v. State, 24 Tex. App. 326, 6 S. W. 300; Olliver v. State, 33 Tex. Crim. 541, 28 S. W. 202.) Where evidence of independent crimes have been improperly received, and apparently prejudicial to the rights of the accused, a charge to disregard it will not cure the error. (Boyd v. United States, 142 U. S. 450, 35 L. Ed. 1077; People v. Jacks, 76 Mich. 218, 42 N. W. 1134; Welhousen v. State, 30 Tex. App. 623, 18 S. W. 300; Com. v. Campbell, 7 Allen 541, 83 Am. Dec. 705; State v. O'Donnel, 36 Ore. 222, 61 Pac. 892.) The court erred in denying defendant's offer of proof tending to show that some other person committed the crime. (Horn v. State, 12 Wyo. 80; 16 C. J. 559 and cases cited; Ogden v. State, 28 S. W. 1018; People v. Mitchell, 34 Pac. 698; People v. Myers, 12 Pac. 719.) To make a declaration of one conspirator's evidence admissible against the others, they must be made in furtherance of a common design. When the conspiracy has been consummated, then the admissions of one, in the absence of the others, that he and others participated in the crime, is a narrative of a past occurrence and can affect only the one who makes it. (Dean v. State, 130 Ind. 237, 29 N. E. 911; State v. Goyens, 204 Pac. 704; State v. Aiken, 41 Ore. 284, 69 Pac. 683; 5 R. C. L. 1089; 16 C. J. 656; State v. Palmer, 79 Minn. 428, 82 N. W. 685; State v. Harris, 150 Mo. 56, 51 S. W. 481; State v. Walker, 100 N. W. 354; State v. Weaver, 165 Mo. 1, 88 Am. St. Rep. 406, 65 S. W. 308; Donald v. State, 21 Oh. Cir. Ct. 124; Bowen v. State, 47 Tex. Crim. R. 137,82 S. W. 520.)

Testimony of the deputy sheriff as to statements made by defendant, while under arrest, was incompetent. (Maki v. State, 18 Wyo. 481.) No sufficient foundation was laid for receiving in evidence the alleged dying declaration of Nancy Wales. (2 Bishop's New Crim. Proc. 1212; 4 Enc. Evi. 929; State v. Jaggers, 36 S. E. 434.) The court erred in refusing defendant an opportunity to make a further statement. Even if the court should hold that the shoes

offered in evidence were sufficiently identified and properly admitted, the evidence in the case that the tracks found fitted these shoes would be insufficient to support the verdict. (6 Enc. Evi. 706 and note 67; 5 R. C. L. 183; Kinnan v. State, 86 Neb. 234, 125 N. W. 597; 21 Ann. Cas. 335, 27 L. R. A. 478; Cummings v. State, 110 Ga. 293, 35 S. E. 117.) The jury was insufficiently instructed by the court. Defendant was entitled to have a jury instructed on every phase of the evidence, particularly on the question of identification, and failure to do so is reversible error. (Underhill on Crim. Evi. (2nd Ed.) 94; Petty v. State, 83 Miss. 260, 35 So. 213.) Also as to what constituted a conspiracy, the court should have instructed the jury as to the object, purpose and effect of receiving evidence and testimony of crimes. (16 C. J. 2446.) If the question of defendant's guilt was to be submitted to the jury, the question of whether the defendant was guilty of murder in the second degree or manslaughter was involved, and the jury should have been so instructed. Upon a charge of first degree murder and a plea of not guilty, defendant was entitled to instructions as to the lesser degree of murder, where the offence is divisible into separate and distinct degrees or grades of crime under the information. (State v. Phinney, 13 Ida. 307, 12 Ann. Cas. 1081, 12 L. R. A. (N. S.) 935.) That which distinguishes a murder in the first degree from any other kind of homicide, is the existence of a settled purpose and fixed design upon the part of the slayer to cause death. (3rd Ed. Wharton on Homicide, 139-141; 6 Enc. Ev. 592 and cases cited; People v. Foren, 25 Calif. 365.)

Instruction No. 2 did not instruct or inform the jury and tended only to confuse them. Instruction No. 3 is erroneous in the definition of malice. Instruction No. 4 omits the element of reasonable doubt. There was no evidence that defendant bore any ill-will towards deceased, hence no premeditation shown. (James v. State, 196 Pac. 1045 (Wyo.); Robbins v. State, 8 Oh. St. 131.) Where an unlawful act

aimed at one person causes the death of another, the act will
be what it would have been had the person whom the unlaw-
ful act was aimed at been killed, but in some of the states
such a killing is never regarded as murder in the first de-
gree. (Musick v. State, 21 Tex. App. 69, 18 S. W. 95; Hon-
eycutt v. State, 42 Tex. Crim. 129, 57 S. W. 806; Wright
v. State, 44 Tex. 645; Bratton v. State, 10 Hump. 103
(Tenn.); Robbins v. State, 8 Oh. St. 131; James v. State,
196 Pac. 1045 (Wyo.) The instruction on conspiracy was
erroneous. (State v. Furney, 21 Pac. 213 (Kans.) In-
struction No. 9 on circumstantial evidence should not have
been singled out and designated as given on defendant's re-
quest. (People v. Bundy, 168 Calif. 888, 145 Pac. 537.)
Instruction No. 17 was erroneous since it tells the jury that
the instructions preceding it embody the law of the case.
The additional instructions given the jury, upon their re-
turn to court for additional instructions, were erroneous.
The court erred in refusing defendant's requested instruc-
tion to return a verdict of not guilty. Defendant's request-
ed instruction No. 2a should have been given. (State v.
Aspara, 113 La. 940; Gardner v. State, 196 Pac. 750 (Wyo.)
Defendant's requested instruction No. 4a should have been
given. (Horn v. State, 12 Wyo. 80; Galloway v. State, 70 S.
W. 212.) Defendant's requested instruction No. 5a should
have been given as it is supported by the following authori-
ties: (People v. Ah Chung, 54 Calif. 399; People v. An-
thony, 56 Calif. 397; Brookin v. State, 26 Tex. App. 121;
People v. Stewart, 76 Mich. 21; State v. Furney, 21 Pac.
213; Henderson v. Com. 98 Va. 797, 34 S. W. 881.) The
court erred in authorizing a separate trial on the motion of
the prosecution. (Mayfield v. State, 142 Wis. 661; Moore
v. People, 31 Colo. 336, 73 Pac. 30; Rachels v. State, 51 Ga.
374; Barrett v. People, 220 Ill. 304, 77 N. E. 224.) The
names of two of the trial jurors did not appear on the last
assessment roll of the county as is required by Section 1204
C. S. (Lamphier v. State, 70 Ind. 317; Boren v. State, 23
Tex. App. 28, 4 S. W. 463; People v. Warner, 147 Cal. 546,

82 Pac. 196; People v. Thompson, 34 Cal. 671; State v.
Arnstein, 9 Kan. App. 697, 59 Pac. 902; People v. Tacker,
108, Mich. 652, 66 N. W. 562; Schlacker v. Ashlund, 89
Mich. 253, 50 N. W. 839; Kelly v. People, 55 N. Y. 565, 14
Am. Rep. 342; Conway v. Clinton, 1 Utah 215; State v. Mc-
Dowell, 61 Wash. 398, 112 Pac. 521.)   An open venire
should never be issued in view of the provisions of 1238,
1239 and 1242 C. S. 1920.   Our statute directs a drawing
from the general list of jurors found to be qualified by the
jury commissioner.   It was the intention of the legislature
in enacting our jury law that when jury box number three
is exhausted, an order shall be made by the court directing
the clerk to draw from jury box number one as many names
as will be necessary to complete the trial jury, and that is
the practice by some of the district courts of the state, not-
withstanding the decision of this court in Gunnell v. State,
21 Wyo. 125.

F. A. Michels, Prosecuting Attorney, W. L. Walls, Attor-
ney General and Vincent Carter, Deputy Attorney General,
for defendant in error.

In his opening statement the prosecutor stated facts
which he intended to introduce.   The authorities cited by
plaintiff in error do not sustain his contention of misconduct
of the prosecuting attorney, for the reason that they dis-
close an entirely different state of facts from those in the
case at bar.   A statement of a fact, expected to be proved,
upon which the prosecutor offers no evidence is not pre-
judicial.   (Nicholson v. State, 18 Wyo. 311; State v. Mc-
Donald, 21 N. M. 110; 16 C. J. 890; People v. Gleason, 127
Calif. 323.)   Usually such a statement is prejudicial to the
party making it.   (12 Cyc. 1270.)   Evidence of other
crimes is competent where it tends to show malice, motive or
intent, or identify the accused as the slayer of deceased.
(Horn v. State, 12 Wyo. 80; People v. Jones, 99 N. Y. 667;
State v. Lepage, 57 N. H. 245; Commonwealth v. Holmes,
157 Mass. 233; Molineux v. People, 61 N. E. 286; Comm.

v. Goodwin, 161 Grey, 55; State v. Hoyt, 46 Com. 330; Frank v. State, 141 Ga. 243; People v. Argentos, 106 Pac. 64; Deiby v. State, 149 Wis. 462; O'Boyle v. Comm. 100 Va. 785.) Defendant's offer of proof did not tend to show that some other person committed the crime. The question is discussed in Irvin v. State, 146 Pac. 453; Horn v. State, 12 Wyo. 80. The defense called as its witness one Bob Coleman who is charged in a separate information with the killing of deceased. The state on cross-examination of the witness clearly indicated that the witness had been called for the purpose of impeaching him. It is elementary law that confessions or statements made voluntarily by a prisoner to an officer are admissible against him. (Clay v. State, 15 Wyo. 42; 12 Cyc. 466; Wharton Crim. Ev. Sec. 662-663; People v. Kennedy, 159 N. Y. 346; State v. Davis, 6 Idaho 159; Coil v. State, 62 Neb. 15; Comm. v. Holt, 121 Mass. 61; State v. Lewis, 112 La. 872; People v. Owen, 154 Mich. 571; State v. Grey, 69 Mo. 431.) Dying declarations of deceased were properly admitted under the rule, tending to show a sense of impending death. (State v. Young, 104 Iowa 730; State v. Somnier, 33 La. An. 237; State v. Baldwin, 35 Pac. 650; Clark v. State, 105 Ala. 91; Lemons v. State, 97 Tenn. 560.) Other witnesses testified that deceased had requested them to see that her children were taken care of "afterwards" or "after this," tending to show that deceased had no hope of recovery. (Reg. v. Goddard, 15 Cox C. C. 7; Foley v. State, 11 Wyo. 464.) The relevancy and admissibility of dying declaration rests in the discretion of the court. (Brennan v. People, 37 Colo. 256; State v. Kuhn, 117 Iowa 216; Corn v. Bishop, 165 Mass. 148.) A witness may be impeached by showing that he made statements out of court contradictory to his evidence at the trial. (Flandeis v. State, 24 Wyo. 81; Jones v. State, 141 Ala. 55; State v. Porter, 74 Iowa 623; People v. Row, 135 Mich. 505.) Defendant made a statement not under oath. The defense then rested. Plaintiff introduced rebuttal evidence. Defendant asked to make a further statement which

was objected to and the objection was sustained. Defendant was entitled to a second statement. (Robinson v. State, 58 S. E. 404.) At any rate it was discretionary in the court to permit a second statement. (Milliken v. State, 69 S. E. 915, 8 Ga. App. 478; Cochran v. State, 39 S. E. 337, 113 Ga. 736; Sharp v. State, 36 S. E. 633, 111 Ga. 176; Peavy v. State, 40 S. E. 234, 114 Ga. 260; Williams v. State, 30 S. E. 814, 105 Ga. 489; Williams v. State, 76 S. E. 347, 138 Ga. 825.) The evidence as to the peculiarity of foot prints found near the place of crime was properly admitted. (James v. State, 104 Ala. 20; Busby v. State, 77 Ala. 66; Clark v. State, 28 Tex. App. 189; Crumes v. State, 28 Tex. App. 516; 16 C. J. Sec. 1051, p. 548.) Defendant did not request instructions on any of the points of which he now complains the court failed to instruct, nor was such failure to instruct assigned as error in the motion for new trial. (Delaney v. State, 14 Wyo. 1.) The identity of the accused with the person committing the crime is a question of fact for the jury. (Moore v. Georgia, 73 Ga. 139; People v. Jackson, 74 N. E. 565; State v. Cushenberry, 56 S. W. 737; McElroy v. State, 152 S. W. 1019.) An instruction on conspiracy was unnecessary. (State v. Paxton, 29 S. W. 705; Comm. v. O'Brien, 66 Mass. 84; People v. Richards, 51 Am. Dec. 75; State v. Anderson, 89 Mo. 312; State v. Walker, 98 Mo. 95; Comm. v. Delaney, 1 Grant Cas. 224 (Pa.). The omission of an instruction as to the effect of evidence of other crimes was not prejudicial error. (Gentry v. State, 8 S. W. 925; Shipp v. Comm., 41 S. W. 857.) Defendant was not entitled to an instruction as to his right to make a statement not under oath. (Leslie v. State, 10 Wyo. 10; Anderson v. State, 27 Wyo. 345.) The evidence showed that defendant was guilty of nothing less than murder, hence there was no requirements on the lesser degrees of murder. (Ross v. State, 16 Wyo. 285; Brantley v. State, 9 Wyo. 102; People v. Rogers, 126 Pac. 143; State v. McDonald, 149 Pac. 279; Darlington v. State, 50 S. W. 375; People v. Tugwell, 163 Pac. 508; Lovett v. State, 17 L. R.

A. 705.) No exceptions were taken, except to a small part
of the instructions given by the court and the remainder
are not before this court·for consideration. (Rule 13, Su-
preme Court; Ross v. State, 16 Wyo. 285; C. B. & Q. R. R.
Co. v. Lampman, 18 Wyo. 106; Loy v. State, 26 Wyo. 381;
Boulter v. State, 6 Wyo. 66; Gustavenson v. State, 10 Wyo.
300; Cook v. Territory, 3 Wyo. 110.) Instructions num-
bered two and three given by the court embody the stat-
utory definition of murder in the first degree and are suffi-
cient. (16 C. J. 968; Alt. v. State, 88 Neb. 259; State v.
Lynch, 86 Kan. 528; Duncan ·v. People, 134 Ill. 110; Sim-
mons v. State, 34 S. W. 619.) Instruction No. 3 on malice
is a correct statement of the law. (Ross v. State, 8 Wyo.
351; Downey v. State, 11 Wyo. 86; Meldrum v. State, 23
Wyo. 12.) Instructions given by the trial court compre-
hensively embrace the laws applicable to issues presented,
hence no error can follow in refusing to give other instruc-
tions requested. (Horn v. State, 12 Wyo. 80; Arnold v.
State, 5 Wyo. 439; Cook v. Territory, 3 Wyo. 110.) The
court is authorized to grant separate trials on motion for
separate prosecution. (Hoffman v. Commonwealth, 134
Ky. 733; Curran's case, 7 Grattan's Rep. 627; Clark's
Crim. Proc. 154.) It is a matter within the descretion of the
court. (State v. Prater, 43 S. E. 230; State v. Thaden, 45
N. W. 614; Felder v. State, 9 Ala. App. 48, 181 Ind. 613,
167 Ky. 544.) The jurors, Lewis and Kingston, paid taxes
for 1920. They were drawn and accepted without challenge;
failure of either side to ask them whether their names were
on the last assessment roll or not was not prejudicial. (State
v. Lowe, 56 Kans. 597; 12 Enc. Pl. & Prac. 276; State v.
Breen, 59 Mo. 413; Kingen v. State, 46 Ind. 132.) Failure
to interrogate a juror at the proper time precludes the right
to raise a question of his competency later. (Croy v. State,
32 Ind. 384; Frank v. State, 39 Miss. 705; Edwards v.
Georgia, 55 Ga. 428; Spittorff v. State, 108 Ind. 171; Speer
v. State, 123 S. W. 415; Woodland v. State, 123 S. W. 141;
People v. Samford, 43 Cal. 29; State v. Pickett, 103 Iowa

714; Corley v. State, 65 S. W. 1073.) Motion for arrest of judgment is not available for alleged errors of this nature. (State v. Williams, 36 La. Ann. 361.) The court had power to cause the issuance of an open venire to complete the jury. (Carter v. Territory, 3 Wyo. 193; Gunnell v. State, 21 Wyo. 125; Clawson v. U. S., 4 Utah 34, 114 U. S. 477; Mitsunaga v. People, 54 Colo. 102; E. Denver Munic. Irr. Dist. v. Altura Farm Co., 60 Colo. 452; Moore v. State, 9 Okla. 9.)

METZ, District Judge.

The alleged homicide out of which this proceeding in error arises took place near Green Mountain, in Fremont County, Wyoming, on the evening of August 20th or 21st, 1920, when one Nancy Wales was shot two or more times through the legs, between the ankles and knees, from the effects of which she died on August 25th, 1920. On August 25th, 1920, William D. Johnson filed a criminal complaint before the Justice of the Peace charging the defendant, Henry V. Johnson, Charles Coleman and Ray Thomas, with the crime of murder in the first degree. The defendants were arrested and placed in jail; preliminary examination was held before the Justice of the Peace and all the parties were bound over without bail for their appearance at the next term of the district court. November 10th, 1920, the county and prosecuting attorney filed an information charging that Henry V. Johnson, Charles Coleman and Ray Thomas, on the 21st day of August, 1920, unlawfully, feloniously, purposely and with premeditated malice, did kill and murder one Nancy Wales, and on the same day the prosecuting attorney presented his written motion asking the court for an order that the above named defendants be tried separately without assigning any cause or reason for such motion, and on the same day the motion was granted, over the objection and exception of counsel for the defendants, and on the 2nd day of December, 1920, the defendant, Henry V. Johnson, was placed on trial charged with the crime of murder in the first degree.

During the impaneling of the jury for the trial of said cause, the regular panel was exhausted and the court, over the objection of the defendant, issued an open venire. The jury was finally secured and after several days occupied in the trial of the case, the jury returned a verdict finding the defendant, Henry V. Johnson, guilty of murder in the first degree, without capital punishment.

Motion for arrest of judgment was made on the 9th of December and the same overruled and exception taken by defendant. On the 11th of December, 1920, the defendant was sentenced to imprisonment for his natural life. On December 10th, 1920, the defendant presented to the court his motion for a new trial, alleging, among other things: First, that the court erred in requiring the defendant to be tried separately from his co-defendants, upon the application of the state; Second, mis-conduct of attorneys for the state in making the opening statement to the jury; Sixth, that the verdict is not sustained by sufficient evidence; Nine, the disqualification of two jurors to serve as trial jurors in the cause. This motion was, on the 31st of December, 1920, overruled, and defendant excepted, and on the 27th of December, 1921, the defendant filed in this court his petition in error, alleging, among other things, error of the trial court in overruling said motion for a new trial. There were a great many objections and exceptions taken to questions propounded during the trial that we do not deem it necessary in this court to make reference to. As this case is here on the petition in error and the transcript of all the evidence is before us, altho a number of the exhibits are not here, this court will consider the entire record in this case, but we do not deem it necessary to pass upon all the points raised by counsel for the defense.

The defense alleges that the court erred in sustaining the motion of the county attorney to separately try the defendant and especially so because there were no reasons or grounds given for the ordering of a separate trial of the defendant; counsel for the defense seriously contending that

under our statute the state has no right to separately try one of a number of defendants where they are jointly charged with a felony in the information.

Section 7534 of Wyoming Compiled Statutes, 1920, provides for an order for separate trial of defendants and reads as follows:

"SEPARATE TRIALS IN CASE OF FELONY. When two or more persons are indicted for a felony, each person so indicted shall, on application to the court for that purpose, be separately tried."

It can be readily seen from the above section that if one of the defendants asks for a separate trial that it cannot be refused by the court and that he is entitled to a separate trial as a matter of right on his application when timely made.  But in this case the defendant did not request a separate trial, but the prosecuting attorney made the application to the court for an order to try the defendant separately.  This motion was granted and it is the granting of this motion which the defendant alleges as error.

The practice of trying separately persons jointly indicted upon the application of the prosecution grew out of the great inconvenience which resulted from the exercise by each joint defendant of the several rights to challenge jurors peremptorily, each being entitled to the same number of challenges that he had on the separate trial.  The venire was frequently exhausted and trials were prevented from the deficiency of jurors.  At common law the prosecution had the right of election subject to the control and discretion of the court, whether to arraign and try persons jointly indicted, separately or jointly, and the defendants could not raise their voices in opposition thereto.  Now, however, the law is changed and the defendant is given rights that he did not have under the common law and ordinarily now the application for a separate trial comes from the defendant. We do not think, however, that the statute contemplates the defendant only is entitled to request a separate trial. We believe the state is entitled to the same rights that the

defendant has in reference to demanding separate trials of the defendants, subject to the approval of the court; and it is our opinion that the trial court did not err in granting the motion of the county attorney to try the defendant separately. This question has been raised in a great many states but the statutes vary in so many of the states that we have simply selected one or two as an illustration of what we believe the rule should be.

Kentucky has a statute quite similar to ours, which reads as follows, Section 237, Criminal Code of Practice:

"If two or more defendants be jointly indicted for a felony, any defendant is entitled to a separate trial." .

In deciding a question similar to the one here being discussed, as to whether the defendant should have a separate trial at the instance of the state's attorney, the Kentucky court says, in the case of Hoffman v. the Commonwealth, 134 Ky. 733:

"The language of this section is mandatory as to the right of a defendant, jointly indicted with another or others for felony, to a separate trial. The court is without power to refuse it to him when demanded. The section is, however, silent as to the right of the commonwealth to separately try one of several defendants jointly indicted for felony. But, in the absence of any statute denying the commonwealth the right to try separately one of several defendants so indicted, there is, in our opinion, no obstacle in the way of its exercise of such right. It must not be overlooked that at the common law, the commonwealth, not the defendant, in cases of joint indictments, had the right of election, subject to the discretion of the court, whether to try defendants jointly or separately. The code only changes the common law to the extent of also allowing the defendant, in cases of joint indictments for a felony, the right to demand and have a separate trial, but does not take away from the commonwealth the right to separately try each of several defendants, jointly indicted for felony. In other words, the common law, in respect to this right of the common-

wealth, has not been abrogated by the code.   It will further be observed that, although Section 237, Criminal Code Practice, gives to a defendant, jointly indicted with another or others, the right of separate trial, it does not confer upon. him the right to a joint trial, nor does such a right exist at the common law.   It follows, therefore, that a severance may be ordered at the instance of the commonwealth, as of the defendant; and, where justice so requires, the court may order separate trials of its own motion, without application therefor by either party.'' together with the numerous authorities sustaining this opinion cited in this decision.

Indiana has passed on this question several times and their statute is somewhat similar to ours, which reads as follows:   Section 2135, Burns Annotated Indiana Statutes, 1914:

''When the indictment or affidavit is for a felony charged against two or more defendants jointly, any defendant requiring it, before the jury is sworn, must be tried separately.''

In the case of Woodsmall v. State, 181 Ind. 613, the court says:

''Although 237 Burns 1914, 237 R. S. 1881, had the effect to abolish common-law crimes, it neither excludes common law procedure in criminal causes, nor prevents resort to common law practice in matters not covered by statute, so that the common law rule that separate trials of persons jointly indicted may be had on demand of the prosecution remains and is unaffected by 2135 Burns 1914, Acts 1905 p. 584, 259, providing for separate trials in certain cases at the instance of a defendant.''

And the court further says on Page 618 in said opinion, quoting from another Indiana case:

''It is a mistake to suppose that one jointly indicted with another has a right to a joint trial; on the contrary, at common law the prosecution might demand separate trials, and under our statute any defendant may demand that a separate trial be awarded him.   The court, when justice re-

quires it, may suggest in express words the propriety of separate trials.''

The defendant in this case complains of alleged misconduct on the part of one of the attorneys for the state in the making of his opening statement to the jury and has taken up considerable space in his brief on this subject, but we do not find that counsel for the state committed any error under the record in this case on this point. Counsel for the defendant contends that the attorney for the state, in his opening statement, made numerous and divers statements that would be incompetent and inadmissible, if he attempted to prove them, and especially in reference to alleged shooting affrays that the parties implicated in this case had engaged in with the deceased and her household. We think that it is the duty of the attorney for the state to outline to the jury in a brief and concise manner what he expects to prove and to confine himself to facts and circumstances that will be competent as evidence, but we do not believe that the rule should be so strict that where the attorney for the state fails to introduce evidence mentioned in the opening statement, or where parts of the evidence might be incompetent, and he acts in good faith and has reasonable grounds to believe that he can introduce certain evidence pertinent to the case and does not use abusive, inflammatory and scurrilous language toward the defendant, that it should be held error.

These matters lie largely within the control and discretion of the trial court and the prosecutor should be kept within reasonable limits in his statements and he should not allow his zealousness to carry him to the extent of making wild or reckless statements, or mention matters that are foreign to the case that might prejudice the minds of the jury.

It is difficult to lay down a rule and strictly adhere to it as the facts and circumstances surrounding every case are different.

As stated in People v. Gleason, 127 Cal. 323, the court said:

"It would be going a great distance to hold that every time the district attorney happens to state in his opening more than he is able to prove, the judgment should be reversed for misconduct; and there is nothing in the present case to show such an extreme disregard for the truth and such a clear intent to influence the jury by false statements, as would warrant the reversal of the case upon that ground. Usually such an over-statement is prejudicial to the party making it."

Again, in 16 Corpus Juris, 890, that author says, in effect:

"The prosecuting attorney may generally, in opening his case to the jury fully outline facts which he expects and which it is competent for him to prove; and, although he states facts which are not followed by proof because the facts themselves are irrelevant, or because he fails to introduce any evidence or introduces incompetent evidence to support them, his statement is not error, if he acts in good faith and with reasonable grounds for supposing that he can prove the facts as stated, especially where they relate to the transaction or act directly resulting in the consummation of the crime."

Counsel for the defendant takes up a good deal of time and space in his brief contending that the attorneys for the state took undue advantage of the defendant Johnson and assumed the role of persecutors rather than prosecutors. We do not find that to have been the case. However, we do think that the county and prosecuting attorney should refrain from acting as a witness except when necessary to prove something that may have come under his direct observation and could not be proven by some other witness without great expense or inconvenience. The county attorney in this case was on the witness stand a half dozen times and still he made serious objection to the defendant going on the stand more than once. We think the practice of

county attorneys testifying in criminal cases should be the exception and not the rule and that the practice should be discouraged.

The defendant further complains because the court denied the defendant's offer to prove certain facts, which offer was in brief as follows: ''That the defendant now offers to prove that on the night of the 20th of August, 1920, John Wales, Nancy Wales and William Johnson quarreled practically all the night long; that on said night five shots were heard at or about the Wales ranch; and that the defendant offers to prove at this time by competent evidence that during the year 1920 and for two years prior thereto, John Wales slept in a separate bed in his home when he stopped there, and that William Johnson and Mrs. Wales occupied the same bed and that she was in the habit of calling him ''Buddy'' and frequently went around with him, leaving her husband at home, and slept with him at other ranches where they stopped, etc.''

The theory of the state throughout the trial was that the defendant and the Wales family were continually having trouble and shots had been exchanged at different times and litigation was quite frequent between them; that the defendant and two other men shot into the house of the deceased on the night of August 21st, and hit the deceased in the leg, from the effects of which she a few days afterwards died.

The theory of the defense throughout the trial was that the defendant and the other two men were not near the Wales ranch during the night of the 21st of August and that they were at their own home and later at a certain saw mill and that they had proved an alibi; and further, their contention was that the shooting of Nancy Wales was done either by John Wales or William Johnson on the night of August 20th and not on the 21st and that the shooting grew out of the continual trouble that existed beween John Wales and William Johnson from their jealousy over Mrs. Wales

and the peculiar domestic relations that existed on the ranch.

The defense in this offer undoubtedly wanted to show the continual illicit relations between Nancy Wales and William Johnson and the jealousy and anger that it would inspire in John Wales, and the quarrelling on the night of August 20th, 1920, at the Wales ranch and the firing of five shots at the Wales ranch on the night of the 20th.

These facts and circumstances that the defense offered to prove we believe material to the defense and might have thrown considerable light upon the shooting of Nancy Wales.

Taking into consideration all the evidence and the peculiar circumstances in this case, and the fact that John Wales had a 32-20 six-shooter, and a Krag-Jorgenson rifle (30-40) and a 30-30, and that Nancy Wales was shot twice through one leg and once through the other and no blood or bullets were found, and the evidence that the holes in the wall could have been made by a 32-20 pistol or a 30-30 or a Krag-Jorgenson, and the wounds could have easily been made by either gun, we are of the opinion that the trial court should have allowed the defense to introduce the evidence under their offer.

Counsel for the defense further object to the manner in which the jury was secured and complain particlularly about the selection of two trial jurors for the reason that their names did not appear upon the last assessment roll of the county. An examination of the record discloses that two of the jurors were secured under the open venire and that these two jurors and some fifty or sixty others, after being sworn and examined collectively by the prosecuting attorney as to their qualifications as jurors and as to whether their names appeared on the last assessment roll of Fremont County, did not receive a negative reply from these two jurors. Each of the jurors had paid their 1920 poll tax and one had paid a 1920 tax on personal property.

These two jurors' names were afterwards drawn from the jury box and examined by counsel for the state and the defendant, but were not questioned as to whether or not their names appeared upon the assessment rolls.  There is nothing in the record to show any prejudice against the defendant in the selection of the jury; nothing in the record shows that the rights of the defendant were affected by the selection of the two jurors and both sides had full opportunity to ascertain if there was any cause for challenge of these two jurors but they apparently were satisfactory to both sides and were accepted.

The defendant questions the right of the court to complete the jury by issuing an open venire when the statute regulating the manner for impaneling jurors has been exhausted.

This question has been before this court before and was decided in the case of Carter v. the Territory, 3rd Wyoming 193, and the case of Gunnell & Elder v. The State, 21 Wyoming 125, and in which opinion Justice Beard takes occasion to go into the selection and impaneling of a jury in detail, and this court has held that when Jury Boxes 3 and 4 have been exhausted, and the statute not providing a method of securing a trial jury after the exhausting of Boxes 3 and 4; then in that case the court possesses the inherent power to cause an open venire to issue for the purpose of completing the jury.  That is what was done in this particular case we are now considering, and we see no reason for changing the rule that has heretofore been laid down by this court on this question.

We think, however, that especially in capital cases, the practice of county attorneys examining a large number of jurors en masse should be discouraged, as there is too great a likelihood of a juror not answering or not understanding a question, and the county attorney not realizing the fact that he has failed to answer or understand the question propounded.

We now come to the contention of counsel for the defense, that the verdict is not sustained by sufficient evidence to warrant the conviction of the defendant for the crime of murder in the first degree. This, in our minds, is the most important point in the case, and we have spent considerable time in reading the six or seven hundred pages of evidence and the bill of exceptions and the able and voluminous briefs filed on behalf of the defendant and the state. An examination of the evidence in the case discloses that the state bases its claim and right for a conviction entirely on circumstantial evidence and the testimony of John Wales; its theory is that the defendant and others approached within 220 yards of the house on the night of the 21st of August, 1920, and fired numerous volleys consisting of 15 shots from high power guns; to-wit, 30 Government rifles, into and about the house of the deceased, causing her injuries from which she died.

The only evidence in the case in the slightest manner identifying the defendant Henry V. Johnson as being implicated or in any manner connected with this shooting affray is that on the evening of August 21st, 1920, he, in company with Charles and Robert Coleman, left the Jesse Johnson ranch house to go to the Johnson saw mill, some five miles or more distant from the Jesse Johnson ranch and several miles distant from the Wales ranch, and that they took with them a 30 Government Winchester rifle. The nearest any of these men were found to the Wales cabin was one and one-half miles distant and while traveling on the road from Jesse Johnson's ranch, the home of Henry Johnson, to the saw mill.

There is no evidence in the record whatever tending to show that Henry Johnson was even near the Wales cabin except the testimony in reference to a shoe print in which Henry Johnson's shoe fitted. The evidence on this question is not very satisfactory and the fact that the print of this shoe remained the same for two or three weeks after it was discovered, even during several rains, and no evidence as to

when it was made, leads us to believe that the track might have been there for a considerable period of time prior to the 21st of August, and the county attorney raised serious objection to the defendant explaining the shoe track when the defendant desired to make a second statement, after having made a very brief statement when on the stand.

The testimony is all to the effect that the defendant did not wear the particular pair of shoes that the state contends fits the track, on the night of this homicide; a number of witnesses testifying to this fact.  As to the rifle shells found 660 feet west of the Wales cabin and near where the foot prints were found, there is some evidence that Johnson owned a 30 Government rifle, and shows beyond question that Edward Walsh was in this immediate vicinity in charge of a band of sheep for the Hadsell Live Stock Company a few days prior to the shooting, and a couple of days after the alleged shooting, and this witness testifies that he shot a 30 Springfield several times in this immediate vicinity where these shells were found during the time that he was there with his sheep; that he was shooting to scare coyotes, and that the shells that were found and exhibited in court fitted his rifle.

The state's evidence in reference to the bullet holes and the manner in which Nancy Wales was shot is so improbable that we cannot conceive of her being injured in the manner that John Wales and William Johnson testify the shooting occurred.  The evidence of Wales and William Johnson is to the effect that they were all sitting at a table eating supper in the south room and that a volley of shots were fired, not less than three shots in a volley; when the first volley of shots was fired, John Wales was creased across the nose and William Johnson was creased across the back of the neck and that immediately Wales knocked out the light with his hand, and that they got up from the table and another volley of shots was fired and Nancy Wales was shot through the legs and that she was facing north and fell in the door way, and that after she was shot William Johnson didn't touch her or pay any attention to her, but he went out and got a truck

ready to go to town and John Wales wrapped her legs in a flour sack and William Johnson was working around the automobile with a lantern and that there were several shots fired while he was there with the lantern, and that after William Johnson started to town with Nancy Wales, he, Wales, started up the road with his 30-40 Krag, and after going a distance of one and one-half miles, saw three objects moving and he followed them down the road to the saw mill, a distance of several miles, and watched there all night for them to come out in the morning.

It might be well at this time to mention the fact that notwithstanding Wales' testimony that he thought Thomas was the third man that came out of the saw mill cabin, the state, recognizing that Thomas had proven a complete alibi, dismissed the charges against him and released him.

It is admitted that at the time of the alleged shooting, all the Wales household were in the kitchen and that the doors and windows were all closed; that on an examination of the house and the interior thereof, there was found a bullet hole through the west door casing in the middle room and a bullet hole through a log on the west wall in the kitchen. It is very apparent that both of these bullets could not have hit Nancy Wales. A minute and careful search of the entire interior of the rooms by a great many witnesses for the defense and state was unable to bring to light any trace or indication or any bullet marks anywhere in the rooms or any blood stains whatsoever on the floors. If she was shot while in the kitchen, it would make it necessary for one bullet coming through the log to crease Wales on the nose, Johnson on the neck when they were sitting at the table, and a few moments afterwards practically sever Nancy Wales' left leg in two places and also bore a hole through her right leg, and also circle around and come from the east instead of the west in order to hit her.

On the other hand, if she was struck by a bullet after passing through the west door casing in the middle room, then that one bullet would necessarily have had to bore a

hole through the right leg and cut a crease one-eighth inch deep in the same leg, and then make two bullet holes through the left leg, tearing away three inches of both legs bones and making one hole three inches in diameter, and then evaporate.

The doctor who dressed the wounds and cared for the deceased, testified in part as follows:

"* * *

Q. Refreshing your memory from the memoranda which you have, which was made at or about the time, you may describe the wound? By Mr. Dillon: Wound or wounds?

Q. Wounds; whatever wounds you found on that body?

A. On the right leg, there was a hole about the lower portion of the middle third of the leg.

Q. Doctor, get it into English just as close as you can?

A. Well, we will divide the leg into three thirds—to the right of the median line about an inch; and another hole on the left side of the median line about the same location— lower third of the middle third. Then there was another wound a little above that, the back of the leg; sort of furrow, I would say, approximately one-eighth of an inch deep —just a groove.

Q. Now, Doctor, in the right leg; what were the facts with reference to any bones being broken?

A. There were no bones broken that I know of.

Q. Now, what about the wound in the left leg?

A. There were two holes (indicating), in the lower portion of the middle third, and probably an inch and a half to the right of the median line; one hole about an inch lower than the other, and both in the lower portion of the middle third of the leg. On the left side, there was a hole approximately three inches in diameter—a ragged hole.

Q. What was the fact with reference to the bone in the left leg?

A. It was torn away—both bones—for probably two and a half to three inches.

* * *

Q.   What was your opinion from the appearance of the wound, as to whether or not that leg had been hit by more than one bullet?

A.   Two holes.

Q.   What is your opinion?

A.   My opinion is that there was more than one bullet— more than one missle.

Q.   What, if any operation did you perform on Nancy Wales?

A.   We amputated her leg.

\*      \*      \*

It is a mystery to us what became of all those bullets, some 15 in number, as testified to by Wales and Johnson as having been fired, and especially so under the circumstances that only one gun has in any manner been accounted for in the possession of Henry Johnson and the two Colemans, and it was not an automatic, so that the firing of shots in volleys from this one gun was out of the question, as neither a Springfield or Winchester can be worked that fast.   Another thing that seems peculiar; the evidence is very conflicting as to which direction the bullet was travelling when it entered the room, whether up or down.   A great many witnesses testified that by looking through the bullet hole that they saw the ground within fifty feet of the cabin and others that in looking through the bullet hole they looked over the tops of the trees and into the hills a half a mile away.   Another peculiar thing in this case is why there was no evidence of blood anywhere in the house.   Surely this woman bled with one leg practically severed and the other badly lacerated from bullet wounds.   The state has been unable to explain in any manner to our satisfaction how all this damage could be done in a closed room by one bullet with no more evidence of blood and the entire lack of any lead or bullet holes, excepting the one in each room.

The testimony of Wales was so thoroughly impeached by a number of credible witnesses and also that of William Johnson that we do not feel that the defendant in this case

should have been convicted on this character of testimony. Henry Johnson and the two Colemans accounted for their whereabouts; Ray Thomas proved a complete alibi and we cannot conceive of Nancy Wales having been shot in the manner in which John Wales and William Johnson testify that she was injured. The evidence discloses that there was a 32-20 revolver and a 30-40 Krag-Jorgenson rifle and a 30-30 rifle at the Wales ranch and some evidence that William Johnson owned a 30 Government rifle, any one of which could have made these wounds and bullet holes. The evidence further discloses to our satisfaction that Nancy Wales was not shot in the manner claimed by John Wales and William Johnson. The possibility of a person shooting into a room with a 30-06 Government gun at 200 yards and not being able to find where the bullet hit is extremely remote and a bare possibility. The above mentioned facts and circumstances are only a few of the quantity that appear in this record. We feel that where the evidence is of the nature that it is in this case, that it is insufficient to warrant the conviction of the defendant of the crime charged and for that reason the judgment of the lower court is reversed and the case remanded for a new trial.

BLUME, J., and District Judge RINER concur; the latter and District Judge Metz being called in to take the place of Kimball, J., disqualified, and Potter, C. J., who did not sit.