## MARTINEAU VS. MAY.

A purchased land of B, and gave his bond to B to pay certain bonds given by the latter, and discharge mortgages upon said land by which the same were secured. In an action upon A's bond the defense was, that after the purchase the parties agreed that if A would sell his interest in the land to C, and get C's bond running to B, conditioned to pay the same debts which A was bound to pay, and to save B harmless, B would surrender A's bond, and that A did convey to C and get his bond according to the agreement and tender it to B, who refused to receive it and execute the agreement on his part. *Held*, that parol evidence of such agreement was admissible, the defense being an equitable one, based not merely upon the agreement, but also upon such a performance on the defendant's part that it would be a fraud upon him if the plaintiff were allowed to refuse performance.

A witness, and especially a party to the action who has testified on his own behalf, may be impeached by showing that he has attempted to procure another person to give false evidence in the same suit; but it is necessary, as a general rule, to interrogate him as to such attempt before introducing the impeaching evidence, so that he may have an opportunity to explain the transaction.

But where it appeared that the impeaching evidence was received without any previous interrogation, upon that point, of the witness sought to be discredited, but that such witness did not depart the court, but was afterwards recalled and testified upon the subject as fully as he desired: *Held*, that the mere disregard of the order of time in which the two witnesses should have been heard furnished no ground for a reversal of the judgment.

*It seems* that evidence of an attempt by a party to an action to sustain his claim in court by procuring a witness to commit perjury in support of it, is admissible, though not offered for the purpose of impeaching such party as a witness, but as showing a circumstance from which the jury may fairly infer that his claim is not founded in truth.

APPEAL from the Circuit Court for *Milwaukee* County.

The case is stated in the opinion. The jury in the circuit court found for the defendant; the plaintiff moved for a judgment in his favor *non obstante veredicto;* but the motion was denied, and judgment rendered for the defendant for costs.

*Geo. W. Lakin*, for appellant:

The bond sued on was a promise of *May* to answer for the debt of *Martineau*. Had that promise not been in writing, it would have been void. R. S., ch. 107, sec. 2. It follows that any modification of or substitute for such contract, to be valid, must also be in writing. *Ladd v. King*, 1 R. I., 224. The an-

swer sets up an oral agreement to substitute Alton in place of *May*. Neither party was bound by that agreement. If *May* had made out his deed to Alton and procured Alton's bond, and offered both deed and bond to *Martineau*, would the latter have been obliged to receive them, and to cancel the bond sued on ? It was *May's* business to have tested the matter in that way. If *Martineau* had accepted such deed and bond and given up or cancelled *May's* bond, that would have been substantially an award and satisfaction. To make out a defense of that kind, it should appear that the act done or the thing offered was *accepted* by the plaintiff in *satisfaction* of the liability. *Tilton v. Alcott*, 16 Barb., 599 ; *Frost v. Johnson*, 8 Ohio, 393 ; *Delacroix v. Bulkley*, 13 Wend., 71 ; *Daniels v. Hallenbeck*, 19 id., 408. 2, The court erred in allowing the question to one of the defendant's witnesses designed to elicit an answer tending to prove an attempt by defendant to bribe the witness. The attention of the defendant had not been called to the alleged conversation, nor had he been asked whether he had said anything to the witness of the kind sought to be shown. 1 Greenl. Ev., secs. 461, 462, and notes.

*D. G. Hooker*, for respondent:

" An accord is sufficiently executed when all is done which the opposite party agrees to accept in satisfaction of the pre-existing obligation." *Babcock vs. Hawkins*, 23 Vt., 561 ; 2 Story on Con., § 982 ; *Anderson vs. Highland Turnpike Co.*, 16 Johns., 85 ; *Coit vs. Houston*, 3 Johns. Cases, 243. Not only has *May* performed all that he agreed to do, but *Martineau* has received all that he agreed to accept in satisfaction. He recieved the benefits resulting from the conveyance to Alton; and, for the purposes of this case, he received the bond ; *May* was his authorized agent to receive it, and as his agent still holds the bond for him. 2. If there was not a technical accord and satisfaction, yet the agreement is a valid new contract. *Good vs. Cheesman*, 2 Barn. & Adolph., 328 ; *Pratt vs. Hudson River R. R. Co.*, 21 N. Y., 305. It having been executed on

the part of *May*, he could have enforced a specific performance of it. 3. It was competent to show that the defendant had attempted to bribe a witness, without having first questioned the defendant on the subject. In the trial of a cause it is always competent to show any improper conduct of the opposite party in that suit. But if there was any valid objection to the testimony, it was waived by subsequently calling the defendant and interrogating him on the same subject.

*By the Court*, PAINE, J. This action was brought upon a bond by which the defendant became bound to pay and discharge certain other bonds and mortgages previously given by the plaintiff. The consideration of the defendant's bond was the joint purchase by him and others of certain lands from the plaintiff. And the mortgage debts which the defendant became bound to pay, were prior incumbrances on the lands subject to which the sale was made.

The answer sets up as a defense, that after the purchase, the defendant made an agreement with the plaintiff, that if he, the defendant, would sell his interest in the lands to one Alton, and get Alton's bond running to the plaintiff, conditioned to pay the same debts which the defendant was bound to pay, and to save the plaintiff harmless, &c., the plaintiff would surrender and cancel the defendant's bond; that the defendant did convey to Alton and get his bond according to the agreement, and tender it to the plaintiff, but that the plaintiff refused to receive it or fulfil the agreement on his part.

On the trial, evidence was offered sufficient to prove these allegations; but the plaintiff objected to it on the ground that the agreement was by parol. And it is argued here that the evidence was inadmissible to show a discharge of the bond, because, being under seal, it could only be released by writing under seal. And it is said that the evidence did not show an accord and satisfaction, because the plaintiff did not accept the bond of Alton. But these arguments overlook the obvious char-

acter of this defense. It is not that there has been a technical discharge or payment of the bond. But it is an equitable defense founded upon the fraud which would be perpetrated on the defendant, if the plaintiff could be allowed to procure him to convey his lands to a third person on a parol promise to discharge his bond, and then refuse to comply with it. It is to be governed by those principles applicable to cases for the specific performance of parol contracts for the sale of lands which have been so far executed by one party that it would operate as a fraud upon him to allow the other then to repudiate. In all such cases, the objection that the contract was by parol is of no avail. *Paine vs. Wilcox and others*, 16 Wis., 202 ; *Daniels vs. Lewis*, id., 140.

The parties were both sworn on the trial, and the defendant, without having previously interrogated the plaintiff concerning it, was allowed to call a witness who testified, in substance, that the plaintiff had offered the witness five hundred dollars if the witness would testify to such a state of facts in the suit as would secure the plaintiff a verdict.

It is objected first, that it was not competent to impeach the plaintiff by inquiring as to particular acts, but only by evidence of his general reputation for truth ; and second, that such evidence could not be admitted under any circumstances, without first inquiring of the witness sought to be thus impeached, whether the fact was true or not.

The general rule that a witness cannot be impeached by contradicting him as to collateral matters, is well understood. But it has been held, that the feelings of the witness and his disposition to tell or conceal the truth in the particular suit in which he is called, are not collateral within the meaning of this rule. And he may therefore be impeached by showing that he has attempted to procure another witness to give false evidence in the same suit. *Folsom vs. Brown*, 5 Fost. (N. H.), 122 ; *Martin vs. Farnham*, id., 199 ; *Atwood vs. Welton*, 7

Conn., 70 ; *Morgan vs. Frees*, 15 Barb., 352 ; *Queen's Case*, 6 Eng. C. Law, 129.

If such evidence is admissible to impeach an ordinary witness, it would more clearly be admissible against a party to the suit. An attempt by a party to sustain his claim in court by procuring a witness to commit perjury in support of it, would fairly warrant an inference that his claim was not founded in truth. And it must have been upon this principle that in *The State vs. Rohfrischt*, 12 La. An., 382, the prosecution was allowed to prove that the defendant had attempted to bribe one of the witnesses of the state to swear falsely. Such acts by a party would seem fairly admissible as circumstantial evidence which the jury are entitled to consider.

But where such evidence is admitted merely for the purpose of impeachment, it is perhaps the established rule, that the witness sought to be thus impeached must first be interrogated as to the fact. It was so held in the *Queen's Case* above cited ; and such is the general current of authority in this country, though there are cases where the rule has been denied. But in that case the reason of the rule was stated to be, that the witness might have an opportunity to explain. The Chief Justice said : "And it is in our opinion of great importance that this opportunity should be thus afforded, not only for the purpose already mentioned, but because if not given in the first instance it may be wholly lost; for a witness who has been examined, and has no reason to suppose that his further attendance is requisite, often departs the court and may not be found or brought back until the trial be at an end."

This shows, perhaps, a good reason for the rule. But where the reason fails, the rule fails also. And where it appears, as it does here, that the witness thus sought to be discredited, though not previously interrogated, had not departed the court, but was afterwards recalled and testified as fully upon the subject as he desired, there is nothing in the mere disregard of the order of time in which the two witnesses should

have been heard, that would justify a reversal of the judgment. It appears, in such a case, that the party and the witness had all the benefit which a strict compliance with the rule could have given.

The judgment is affirmed, with costs.