No. 26,130.

THE STATE OF KANSAS, *Appellee*, v. KENN B. UHLS, *Appellant*.

OPINION DENYING A REHEARING.

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Evidence—Expert's Comparison of Typewritten Letters—Effect of Failure to Give Opinion*. Where it is in issue whether a typewritten letter was written by the same person who wrote two other letters, offered as standards of comparison, and an expert witness points out with due explanation numerous similarities tending to support that view, the matter may be submitted to the jury although the witness was not asked to give, and did not give, his own opinion on the ultimate question.

2. SAME—*Circumstantial Evidence—Collateral Documents*. In a criminal case, in order to justify submitting to the jury the question (arising in a collateral way as bearing on the existence of one of a number of circumstances tending to support a conviction) whether the defendant wrote a questioned document, his connection with it need not be shown by direct evidence, or proved beyond a reasonable doubt.

3. SAME—*Admission of Collateral Documents*. The evidence is held to justify the admission of the questioned document here involved.

4. SAME—*Fabricated Evidence Admissible*. The fact that a defendant in a criminal case has fabricated evidence in his favor is admissible against him regardless of whether he uses it.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion denying a rehearing filed October 9, 1926. (For original opinion of affirmance see *ante*, p. 377, 247 Pac. 1050.)

*J. R. Beeching, William H. Burnett* and *Charles Hall*, all of Hutchinson, for the appellant.

*Charles B. Griffith*, attorney-general, *W. A. Smith*, assistant attorney-general, *Martin Aelmore*, county attorney, *L. E. Wyman*, assistant county attorney, and *F. L. Martin*, of Hutchinson, for the appellee.

The opinion of the court was delivered by

MASON, J.: A conviction on a charge of murder having been affirmed, a motion for a rehearing is presented, in which is reargued the question of the admissibility of the evidence that after the time when the stock, the obtaining of which the state regards as the motive for the crime, is said by the defendant to have been transferred by

Criminal Law, 16 C. J. pp. 541 n. 91, 555 n. 19, 621 n. 86, 742 n. 47, 756 n. 26, 766 n. 79, 780 n. 6. Evidence, 22 C. J. pp. 907 n. 79, 908 n. 83; 45 L. R. A. n. s. 860; L. R. A. 1918D, 652; 11 R. C. L. 627.

him on the books of the corporation, the victim showed by his statements to a prospective purchaser that he still had it. The matter has been reconsidered and the court remains satisfied with the ruling, upon the grounds stated in the original opinion.

There is also reargued the admissibility of the letter purporting to come from one who had purchased the stock from the victim, and upon this issue it is necessary that the language of the opinion be modified. This letter was upon blank paper, all of it, including the signature, being written with a typewriter. It purported to come from one Westerhaven and to account for his ownership of the stock by purchase from a man named Merton. In the original opinion it was said there was expert evidence that this letter was written on a typewriter used at the Uhls sanitarium. That statement was based on a misconception of the evidence, and is withdrawn. The defendant's contention in this regard was also inaccurately stated. However, the court is still of the opinion that the admission of the letter did not constitute error. But the grounds of the ruling require a somewhat fuller statement than that made in the original opinion.

In the state's brief it is said that the purpose of the expert testimony, which it introduced, was to show that the Westerhaven letter was written on the typewriter at the Uhls institution. In his direct examination the expert witness was shown the Westerhaven letter and also two letters typewritten on Uhls company letter heads and proved to have been signed by the defendant. He pointed out a number of peculiarities common to all three, such as the spacing, punctuation, arrangement of paragraphs, manner of correcting wrong letters, and the partial perforations made by punctuation marks. He was not asked whether in his opinion the typewriting was done by the same person or on the same machine, but his testimony warranted the inference that such was the case as to the person, and at the time the opinion was written this was thought to be true also as to the machine—a matter it will not be necessary to pass upon.

On cross-examination the witness was shown an additional letter which the defendant's amanuensis and office employee, testifying for the state, said she had written. He pointed out similarities (as well as some differences) of the kind already indicated between this letter and the others, and on being asked what he would say as to who wrote this letter and the Westerhaven letter answered, "I think probably they were written by the same person." He also testified that while the three other letters shown him were written on a Royal

machine, the Westerhaven letter was written on an Underwood. Speaking of the last letter shown him, he gave this testimony:

"A. The date line is one space higher and much nearer the left hand margin than it is in any of the other exhibits.

"Q. But written on the same machine?  A. Yes, sir."

Taking the testimony as a whole, it must be regarded as showing affirmatively that the Westerhaven letter was not written on the same machine, or the same make of machine, as the other three. But it was a fair question for the consideration of the jury whether there were such similarities between that letter and the two submitted by the state as standards of comparison as to warrant a finding that they were written by the same person. And if they were written by the same person the inference that the defendant was their author could readily be drawn. The defendant's amanuensis testified that while she usually wrote his letters he was reasonably expert in operating the typewriter and sometimes wrote them himself. While the expert witness was not asked to give an opinion, and gave none, as to whether the Westerhaven letter was written by the same person who wrote the two signed by the defendant and offered by the state as standards of comparison, he called attention to the various similarities that might lead to that conclusion, and it was competent for the jurors to form their own judgment concerning the matter. (*Joseph v. National Bank,* 17 Kan. 256, cited in *Baird v. Shaffer,* 101 Kan. 585, which is annotated in L. R. A. 1918D 638. See, also, note, 62 L. R. A. 867.) The expert's testimony that he thought it probable the same person wrote the Westerhaven letter and the letter shown to have been written by the defendant's amanuensis is not conclusive upon the state. The jurors were the judges of that matter. It may be noted that the Westerhaven letter and the two letters produced by the state as standards of comparison were submitted to the expert witness for his examination on the morning of the day before he was called to the stand. The letter shown to have been written by the amanuensis was first submitted to him as a part of the defendant's cross-examination, and his scrutiny of it may well have been less searching than in the case of the other documents.

Moreover, the situation with regard to the admissibility of the Westerhaven letter in evidence is quite different from what it would be if, for instance, the defendant were being prosecuted on a charge of having written it. The letter was a mere episode, an incident in

the trial, having a possible bearing on the case as one of a number of circumstances tending to show his connection with the murder. That such a letter was received is not questioned. If it was genuine, if it was what it purported to be, it supported the defendant's story and made for his acquittal. If it was written by the defendant or by his procurement it showed an effort on his part to manufacture evidence in his favor. It is intrinsically improbable that it had any origin other than one of these, although it is possible. Its history was a fair matter for the consideration of the jury in the light of all the information available concerning it. In the defendant's brief it is said that "the letter should not have been introduced unless it was proven by direct and certain testimony to have been written by the appellant." This we regard as an overstatement. The authorship or authenticity of a letter "may be proved by indirect or circumstantial evidence, as other facts." (3 Jones' Commentaries on Evidence, § 583; see, also, 4 Wigmore on Evidence, 2d ed., §§ 2131, 2148, 2149.) And the rule as to the degree of certainty required is not different from that in relation to any other item in a series of circumstances relied upon to establish an ultimate fact.

"It is not necessary that it should be proved beyond a reasonable doubt that the letter is that of the alleged author, but evidence which, if uncontradicted, would satisfy a reasonable mind of that fact is sufficient to authorize the admission of the letter, and whether a sufficient foundation has been laid for the admission of the evidence is a matter addressed to the discretion of the trial court." (22 C. J. 907.)

In order to warrant a conviction every element of a crime must of course be proved beyond a reasonable doubt, but it does not follow that every fact relied upon as tending to show guilt must have been established by evidence of that high degree of persuasiveness, although there are cases going that far. (See 16 C. J. 766, note 79.) What we regard as the better rule, as applied to a situation such as that here presented, is thus stated:

". . . Where the prosecution relies upon circumstantial evidence, it is not necessary that each circumstance relied upon shall be proved beyond a reasonable doubt; but all the circumstances should be considered, and if those actually proved taken together are sufficient to satisfy the jury of defendant's guilt beyond a reasonable doubt, they should not acquit merely because one or more of the circumstances relied upon by the prosecution is not thus proved." (16 C. J. 766.)

"It is not necessary that each particular fact advanced by the prosecution should be proved beyond a reasonable doubt; it is sufficient to warrant a conviction if, on the whole evidence, the jury are satisfied beyond such doubt that accused is guilty." (16 C. J. 780.)

The objection urged to the admission of the Westerhaven letter is that there was no evidence, or no sufficient evidence, that the defendant wrote it. It has been held in one case that the fact of the defendant in a criminal action having fabricated evidence in his favor is not admissible against him unless he has used it. (*Baker v. State*, 82 Miss. 84.) We regard it as competent regardless of that consideration, and the authorities support that view. (*State v. Wilson*, 108 Kan. 433, 195 Pac. 618; 16 C. J. 541, 555-6; 1 Wigmore on Evidence, 2d ed., § 278, p. 569.) In note 3 on the page just cited the Mississippi case referred to is characterized as unsound. Unsuccessful efforts of a defendant to induce false statements in his behalf are often shown against him. See cases in the American Digests under Criminal Law, 351 (8) ; also *Dickey v. State*, 86 Miss. 525.

We think there was sufficient evidence to justify submitting the Westerhaven letter to the jury; that no established rule of evidence was thereby violated; that it brought to the knowledge of the jury a fact that unquestionably existed—the receiving of the letter—and that could not be injurious to him unless the jury found that the evidence fairly connected him with it.

The motion for a rehearing is overruled.