Howard ROBY, Jr., Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee (Plaintiff below).

No. 4926.

Supreme Court of Wyoming.

Dec. 14, 1978.

Ronald P. Jurovich, Thermopolis, and James H. Sperry, Worland, for appellant.

V. Frank Mendicino, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Allen C. Johnson, Asst. Atty. Gen., Cheyenne, for appellee.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

Following a jury trial, the defendant, Roby, was convicted of delivering a controlled substance, marihuana, in violation of § 35–7–1031(a)(ii), W.S.1977. On appeal, he argues that he was denied a fair trial by reason of certain prosecutorial improprieties, and that the evidence was insufficient to sustain the conviction. Having determined that the prosecution engaged in improper cross-examination of the defendant and his father, we will reverse the defendant's conviction.

The charge against the defendant was based on an alleged purchase of two lids of marihuana by a Park County Sheriff's Office informer at defendant's home during the lunch hour on January 5, 1977. The defense was an alibi to the effect that the defendant was not home at the time of the alleged offense, but was having lunch at a drive-in with his father and a friend, Tim Worthington. In the process of preparing for this transaction, the informer, the sheriff, the sheriff's deputy and the prosecuting attorney met at a location near the trailer court where defendant lived. The informer and his vehicle were searched for marihuana, his own money was taken, and he was given $30.00 with which to make the buy. According to the informer, he then went to the defendant's mobile home and purchased two lids of marihuana from the defendant for $30.00. The witness further testified that the defendant's wife and Tim Worthington were present during the transaction.

On July 26, 1977, a pretrial conference was held in accordance with Rule 19, W.R. Cr.P., at which pretrial memorandums were submitted by opposing parties. The defendant did not attend this conference.

The defendant's memorandum listed a "Meal ticket from Geyser Drive-In" as an exhibit. The court's report on the conference does not specifically mention this or any other exhibit as being either received in evidence or agreed upon for any purpose, but simply states:

"Any additional witnesses or exhibits together with the gist of the testimony of the witnesses shall be furnished opposing counsel not later than ten days prior to time of trial."

On appeal, the defendant urges the following as denying him a fair trial:

1. The prosecutor's cross-examination of the defendant concerning the existence of a lunch receipt for January 5, 1977.

2. The presence at the prosecutor's table, after the invocation of the rule of witness exclusion, of the sheriff who was also a witness in the case.

3. Personal participation of the prosecutor in the case investigation.

4. Attempted impeachment of a defense witness by reference to a telephone conversation between the prosecutor and the witness.

We are mainly concerned with the first alleged impropriety, but will discuss the remaining assignments of error since they are likely to arise in the course of a new trial. See, *Goodman v. State,* Wyo., 573 P.2d 400, 413 (1977).

At trial, the defendant took the stand on his own behalf and testified that he was having lunch at the Geyser Drive-In at the time of the alleged drug transaction. On cross-examination, the prosecutor asked him if he had any receipts to show that he was at the Geyser Drive-In, in response to which the defendant said he did not have a lunch receipt for January 5, 1977. When the prosecutor undertook to pursue the matter further concerning the existence of such a receipt, the defense attorney objected on the ground and for the reason that such further inquiry was beyond the scope of direct examination. The objection was overruled and the prosecutor continued to

delve into the matter. The testimony elicited showed that the defendant's father had taken a receipt to the Drive-In and had it dated January 5, 1977, but that the defense had decided not to use it because the date probably wasn't correct. The defendant denied having had anything to do with causing the receipt to be so dated. The document in question was never introduced into evidence and the prosecution offered no evidence linking the dating of the receipt with the defendant. The defendant's father later testified that he had the receipt dated for income tax purposes. Without success, defendant raised the issue of the prejudicial effect of questions inquiring into the dating of the receipt in his motion for acquittal or a new trial. In argument to the court on this motion, the prosecutor pointed to the "failure to be able to explain actions basically maybe on the part of Mr. Roby, Sr., and, I think, on the part of Howard Roby, Jr." as justifying the jury's rejection of the alibi defense. The trial court determined that the "evidence concerning a meal receipt was probably within the province of the jury and up to them to determine."

We have held that a defendant who has voluntarily testified may be cross-examined the same as any other witness and the latitude of cross-examination is largely within the discretion of the court. *Porter v. State,* Wyo., 440 P.2d 249, 250 (1968). Cross-examination of a witness is not, however, without its limitations. When cross-examination is not confined to matters testified to in the examination in chief, it must be limited to those things which affect the credibility of the witness. See, *Johnson v. State,* 8 Wyo. 494, 508, 58 P. 761, 764 (1899).

Generally, the prosecution may impeach a witness' credibility by presenting competent evidence of an attempt to fabricate evidence. *State v. Thomas,* 35 N.C. App. 198, 241 S.E.2d 128, 131 (1978); and 98 C.J.S. Witnesses § 467 (1957). It is improper, however, for the prosecution to leave the jury with an inference of such conduct on the part of the defendant under the guise of impeachment, without substantiating it by evidence tending to prove that the defendant in fact attempted such fabrication. See, *State v. Stevens,* 93 Idaho 48, 454 P.2d 945, 949 (1969). As stated in *State v. Burris,* 194 Iowa 628, 190 N.W. 38, 41 (1922)

" . . . [I]t is not within the province of a prosecutor, under the pretense of affecting the credibility of the witness, to propound interrogatories without any pretense or attempt to establish the truthfulness of the matters suggested by such inquiry and solely to cast insinuations upon the defendant. To open the doors to the cross-examination of a defendant by a proceeding of this character would leave him subject to insinuation and suggestion of gross misconduct, without any semblance of basis to support the same and with limitations fixed only by the extent of the imagination of the interrogator and his audacity in propounding the inquiries. It is no answer to say that the appellant was not prejudiced by this cross-examination because he answered the questions in the negative, and no attempt was made by the state to prove the truthfulness of the matters suggested in the inquiry. The credibility of witnesses is not to be tested by the suggestion of misconduct on cross-examination, with no pretense that such misconduct exists in fact."

See, *State v. Singleton,* 66 Ariz. 49, 182 P.2d 920, 930 (1947); A.B.A. Standards Relating to The Prosecution Function, § 5.7; and 6 Wigmore, Evidence, § 1808, at 371 (Chadbourn rev. 1976). This is not to say that in every case the prosecution must have supporting evidence available before asking a question and then actually introduce such evidence if the witness denies the conduct. See, *United States v. Harris,* 7 Cir., 542 F.2d 1283, 1306–1308 (1976). It is to say, however, that where the question posed is highly prejudicial with regard to its implications, a duty devolves upon the examiner to then offer evidence showing the factual predicate if the response of the witness is unfavorable.

■ Evidence of his attempt to fabricate evidence is particularly harmful to a defendant since it is an incriminating circumstance inconsistent with innocence and tending to show a consciousness of guilt. *State v. Bruner,* 78 Wyo. 111, 319 P.2d 863, 869 (1958). Generally, evidence of an attempt by a third person to fabricate evidence is not admissible on the issue of the defendant's guilt, unless there is evidence connecting the defendant with that attempt. Annot., "Third Person's Attempt to Influence Witness," 79 A.L.R.3d 1156, 1162, § 3 (1977). A mere family relationship between the defendant and the third person is not adequate proof of this connection. *Saunders v. State,* 28 Md.App. 455, 346 A.2d 448, 79 A.L.R.3d 1147 (1975).

■ In this case, the prosecutor's cross-examination and recross-examination of the defendant and his father had the effect of suggesting to the jury that there had been an effort to bolster the defendant's alibi through the fabrication of evidence, yet the prosecutor offered no evidence showing the defendant to have been involved in any such nefarious scheme. A factual circumstance of this nature, if proven, is evidence of guilt; thus, the prosecutor was charged with establishing the factual predicates for his questions before pursuing this course of examination, and this he failed to do. Here, the jury was left with the mere insinuation of improper conduct on the part of the defendant. The prosecutor's tactic cannot be sanctioned upon the ground that the examination was aimed at testing the defendant's credibility, because there was a failure to support the insinuations with competent evidence. We hold, therefore, that the court committed reversible error in permitting, over timely objection, the prosecutor's cross-examination upon the subject of the father's procurement of a lunch receipt, without first requiring an assurance that the prosecution would later introduce evidence of an attempt to fabricate such evidence and which attempted fabrication was authorized by the defendant. Such an examination, under the circumstances of this case, was extremely prejudicial to the defendant, thereby requiring a new trial.

■ The defendant raises an issue separate from, but related to, the prejudicial cross-examination of the defendant with regard to the lunch receipt. During this cross-examination, the prosecutor began a question as follows:

"Q. Did your attorney at the pre-trial conference—"

At this point the defendant objected on the ground that he wasn't at the pre-trial conference. The court sustained the objection. In view of the fact that the objection was sustained, and in light of our previous discussion concerning the luncheon receipt, we find it unnecessary to fully consider the effect of defendant's absence from the pre-trial conference. Suffice it to say that the mere listing of a meal ticket as a possible exhibit on the defendant's pre-trial memorandum did not open up the matter for examination in the absence of reliance thereon by the defendant, or in the absence of competent evidence that this receipt was the result of an attempted fabrication by the defendant.

■ The second alleged impropriety relates to the refusal to exclude the sheriff from the courtroom prior to his testimony. Whether or not a witness will be excluded rests largely within the trial court's discretion. *Whiteley v. State,* Wyo., 418 P.2d 164, 167 (1966). It is accepted practice to permit the prosecuting witness, or some officer active in the prosecution of the case to remain in the courtroom to advise with the prosecuting attorney. *Johnson v. State,* Okl.Cr., 559 P.2d 466, 471 (1977). We find no abuse of discretion in this instance.

■ The third assignment of impropriety has to do with the prosecutor's involvement in the investigation of the case. We note that such activity runs the risk of placing the prosecutor in the position of being a potential witness. This, in turn, may lead to circumstances, as here, where the prosecuting attorney is charged with attempting to bolster his witness' testimony through indirect references to the prosecutor's own involvement in the investigation. We find no law which prohibits a prosecu-

tor's participation in the investigation of crime. Indeed, such involvement may be entirely proper and desirable in certain cases. Prosecuting attorneys should, however, employ discretion with respect to the degree of such involvement in order that they neither prejudice the defendant nor inhibit their own effectiveness in the trial of the case.

The potential danger of over-involvement in a case investigation is illustrated in the prosecutor's cross-examination of a defense witness, Tim Worthington. This relates to defendant's fourth assignment of error. The following is an example of the type of testimony that was elicited:

"Q. Mr. Worthington, I talked with you, the conversation you related, isn't it true in that phone conversation you said you don't remember that week, you don't remember whether you were at Mr. Roby's that day, you could have been but you didn't know for sure?

"A. I am not sure.

"Q. Isn't that what you told me on the phone?

"A. I'm not sure.

"Q. Are you saying you are not sure what you told me on the phone?

"A. I am not sure what I told you on the phone. I remember talking to you.

"Q. Did I ask you about some questions whether or not you had been down there other occasions?

"A. Yes, you had.

"Q. You indicated you had been; is that correct?

"A. I am not sure how many times I told you I had been down there.

\*　\*　\*　\*　\*　\*

"Q. Isn't it true that you told me when I asked you it could have been the 5th of January?

"A. No, sir.

"Q. You didn't say that?

"A. I didn't say they were down there the 5th of January.

"Q. I am not sure you understood my question. My question is did you tell me that it could have been, not that it was

for sure, not that it wasn't for sure, but that it could have been the 5th of January when you had lunch there with Mr. Ring and Mr. Roby and Mrs. Roby was present?

"A. I didn't have lunch down there.

\*　\*　\*　\*　\*　\*

"Q. The question is whether or not you told me that on the phone.

"A. I am not sure if I had or not.

"Q. Did I tell you that I wanted you to testify that you smoked marihuana with somebody down at that trailer or did I ask you whether or not you had?

"A. You were talking about if I thought you should subpoena me or not.

"Q. What else did I say?

"A. Then you asked if we smoked marihuana there on occasion.

"Q. What did you say?

"A. I said on occasion we did."

 We do not approve of this interrogation technique. The prosecutor is, in a real and not too subtle way, presenting unsworn testimony concerning his part of the telephone conversation. This situation can be avoided by following the guidelines set forth in the A.B.A. Standards Relating to the Prosecution Function, § 3.1(f), which provide:

"(f) The prosecutor should avoid interviewing a prospective witness except in the presence of a third person unless the prosecutor is prepared to forego impeachment of a witness by the prosecutor's own testimony as to what the witness stated in an interview or to seek leave to withdraw from the case in order to present his impeaching testimony."

See, *Johnson v. State,* 29 Wyo. 121, 211 P. 484 (1922).

The defendant's conviction is reversed, and the case is remanded for a new trial.

RAPER, Justice, dissenting, with whom THOMAS, Justice, joins.

I dissent.

The record demonstrates to me that the defendant was a knowing participant in an

attempt to fabricate evidence to support an alibi. The prosecutor conducted himself with complete propriety in his cross-examination of the defendant and the defendant's father in that regard. To support my position, a more complete treatment of the facts, procedures and the law is necessary in order to lead into what the holding of the majority should have been.

The issue upon which the majority makes its disposition was raised by the defendant in this appeal in the following fashion: "3. Was Defendant's presence requisite at the Pretrial conference; and if the presence was not requisite, then was Defendant, under the rules, bound by any admissions or statements made by his attorney?"

In that connection, the defendant asserted that the prosecutor improperly conducted himself by cross-examining defendant on the matter of the lunch receipt listed by defendant's counsel on the pretrial memorandum of defendant filed the day before the pretrial conference but not offered at the trial. No objection to defendant's absence at the pretrial conference was made, either at the time of the pretrial conference or at the trial.

Rule 19, W.R.Cr.P. covers the pretrial conference in a criminal case, when held:

"At any time after the filing of the indictment or information the court upon motion of any party or upon its own motion may order one or more conferences to consider such matters as will promote a fair and expeditious trial. At the conclusion of a conference the court shall prepare and file a memorandum of the matters agreed upon. No admissions made by the defendant or his attorney at the conference shall be used against the defendant unless the admissions are reduced to writing and signed by the defendant and his attorney. This rule shall not be invoked in the case of a defendant who is not represented by counsel." [1]

Rule 42, W.R.Cr.P. covers the proposition that:

"The defendant shall be present at the arraignment, at every stage of the trial, including the impaneling of the jury, and the return of the verdict and at the imposition of sentence except as otherwise provided by these rules. * * * " [2]

It is defendant's contention that the language of these two rules requires the defendant's presence. I disagree.

Rule 19 is silent as to the presence of the defendant, but the comment of the federal advisory committee is only that "in some cases it may be desirable or necessary to have the defendant present." [3] As appears from its language, Rule 42, W.R.Cr.P. refers to "trial" and certain specified proceedings before and after trial. Neither Rule 19 nor 42 makes provision for attendance of the defendant at the pretrial conference. A pretrial conference is not a part of the trial within the meaning of Rule 42. *Peterson v. United States,* 8th Cir. 1969, 411 F.2d 1074, cert. den. 396 U.S. 920, 90 S.Ct. 247, 24 L.Ed.2d 199.

In this case, the controversial receipt cannot fall within the provision of Rule 19 that admissions of the defendant or the attorney must be reduced to writing. The defendant's alibi was that his father, a witness in the case, treated the defendant and the latter's friend, Tim Worthington, to lunch at the Geyser Drive-In. Sometime after the defendant was charged and before the pretrial conference, the defendant's father took an old receipt he had from the Geyser Drive-In and asked the proprietor or cashier to date it the day of the crime. The proprietor or cashier accommodated defendant's father. The receipt was not produced by the defense at trial because, according to the father's explanation, it was dated for income tax purposes and he was not sure it

---

**1.** Identical to Rule 17.1, F.R.Cr.P.

**2.** The quoted portion is identical to Rule 43(a), F.R.Cr.P. The rest of the federal rule is similar to the balance of Rule 42, W.R.Cr.P.

**3.** 8 Moore's Federal Practice—Criminal Rules, § 17.103[3]. Moore suggests that the better and more cautious practice is to obtain a written waiver of presence from the defendant. I would join in the suggestion of Moore.

was actually a receipt received on the date it bore. He admitted having other receipts which had not been ante-dated in a similar way. Obviously the receipt episode seriously affected the father's credibility. However that may be, if a pretrial conference is to have any value, anticipated witnesses and exhibits are proper matters of disclosure, as is the nature of the defense. Section 3.3, ABA Standards, Discovery and Procedure Before Trial, Compilation, p. 259.[4] Having made the disclosure, failure to produce the receipt became a fair subject for cross-examination of both the father and the defendant. The State properly came into possession of the information that there was a receipt and it was admitted by both the defendant and his father that there was a receipt. The defendant testified:

"Q. Where did he get that receipt? Do you know?

"A. *We* had it before and it wasn't dated.

"Q. Do *you* have receipts the rest of that week, the 3rd, 4th, 6th, 7th?

"A. No. We only ate there twice."

There was no need to produce the receipt. The defendant and his father furnished all the evidence necessary to establish its existence.

The defendant has cited the following cases to support his position that cross-examination of defendant with respect to the receipt was improper: *Smith v. State,* Okl. Cr.1969, 453 P.2d 307; *U. S. v. Meeker,* 7th Cir. 1977, 558 F.2d 387; *State v. Davis,* 1975, 305 Minn. 539, 233 N.W.2d 561; and, *Roquemore v. State,* Okl.Cr.1973, 513 P.2d 1318. I find none of them to be in point. We could have decided this case on that point alone. The citing of inapplicable authority is equivalent to the failure to cite authority. In the absence of cogent argument or authority to support a contention, it merits no consideration. *Joly v. Safeway Stores, Inc.,* Wyo.1972, 502 P.2d 362. There

is no question here but that a receipt existed, properly disclosed by defendant's counsel at a pretrial conference, and admitted by the defendant and his father. This is not a case of the prosecutor inquiring about evidence that did not exist.

Nor is this a case falling within § 5.7(d), ABA Standards Relating to the Prosecution Function:

"(d) It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner cannot support by evidence."

The comment to the standard states:

"d. Unfounded question

"The attempt to communicate impressions by innuendo through questions which are answered in the negative, for example, 'Have you ever been convicted of the crime of robbery?' or 'Weren't you a member of the Communist Party?' or 'Did you tell Mr. X that . . .?' when the questioner has no evidence to support the innuendo, is an improper tactic which has often been condemned by the courts. See, e. g., *Richardson v. United States,* 150 F.2d 58 (6th Cir. 1945); *People v. DiPaolo,* 355 [366] Mich. 394, 115 N.W.2d 78 (1962); *State v. Flowers,* 262 Minn. 164, 114 N.W.2d 78 (1962). See generally 6 Wigmore, Evidence § 1808(2) (1940). See also American College of Trial Lawyers, Code of Trial Conduct §§ 20(c), (d), (g) (1963)."

The majority, to support its holding, cites *State v. Stevens,* 1969, 93 Idaho 48, 454 P.2d 945, 949, which has much the same thrust as the cited ABA Standard. Following is an excerpt from the page 949 of 454 P.2d referred to:

"During the cross-examination of defendant, he was asked if he had contacted a young lady to have her come to the trial and testify that she had been with him during the day in question. Defendant

4. Section 3.3, ABA Standards, Discovery and Procedure Before Trial, Compilation, p. 259:

"Subject to constitutional limitations, the trial court may require that the prosecuting attorney be informed of the nature of any

defense which defense counsel intends to use at trial and the names and addresses of persons whom defense counsel intends to call as witnesses in support thereof."

objected to this question on the ground that it was improper cross-examination. The trial court overruled the objection, and the defendant denied that he had contacted the young lady in question. Defendant contends there was prejudicial error in this regard because the state did not later produce the young lady to testify to these facts. While the practice on the part of the state of leaving with the jury an inference of improper conduct on the part of the defendant in the guise of impeachment, without properly substantiating it by evidence, is not to be condoned in the trial of a criminal case, herein the charge of prejudicial error is neither supported by citation of authority or contained in the argument in the defendant's brief."

As can be seen, that is not representative of the state of facts before us. The State, here, did produce evidence through cross-examination of the defendant and the father that one receipt out of several was taken by the father with the apparent knowledge of the defendant to the Drive-In for dating as of the day of the crime. That was all the proof necessary. When the father made that admission, there were facts from which the jury could properly draw an *inference*—not innuendo. I have no argument with the *Stevens* case, it just simply is not in point.

*State v. Burris,* 1922, 194 Iowa 628, 190 N.W. 38, cited by the majority likewise deals with the same subject of a bad-faith examination by a prosecutor without an attempt to establish the facts suggested by the inquiry. That is not the situation we have.

I consider it proper to comment on the dilemma into which the defendant placed himself and inferences that the jury and this court can fairly draw from the facts. The defendant apparently represented to his attorney that he could support his alibi of being somewhere else at the time of the crime by means of a dated lunch receipt from the Drive-In. His attorney, relying on those representations in accordance with the criminal rules pertaining to pretrial conferences, in good faith represented to the trial judge and the State's prosecutor that he would support the defendant's alibi with a lunch receipt. Nowhere in the record does it appear that such a receipt would not be produced until the defendant failed to do so during his case.

The lunch receipt, however, was one that had been altered in a dishonest attempt to fabricate evidence. It would seem, then, that the defendant came to realize the dangers arising from such an attempt because of the very real potential that the State could establish its alteration, so decided against its use. However, rather than admit the alteration for the genuine reason to explain its nonuse as evidence, his position was aggravated by a decision to explain it away by a representation that it had been ante-dated for income tax purposes, discredited by the fact that no other receipts had been altered.

The majority applies a sound but inapplicable rule belonging in some other case—not this—to address a question of credibility and permissible cross-examination. When a defendant voluntarily testifies as a witness, he may be cross-examined the same as any other witness and the latitude of cross-examination is largely within the discretion of the trial judge. *Porter v. State,* Wyo.1968, 440 P.2d 249. Once the defendant in a criminal case takes the stand and testifies in his own defense, his credibility may be impeached and his testimony assailed like that of any witness and the breadth of his waiver is determined by the scope of relevant cross-examination; he cannot give to the jury only those facts in his favor without laying himself open to a cross-examination on those facts. *Brown v. United States,* 1958, 356 U.S. 148, 157, 78 S.Ct. 622, 628, 2 L.Ed.2d 589, 72 A.L.R.2d 818.

This court has recently announced its rule with respect to the scope of cross-examination. Rule 611(b), W.R.E.:

"(b) Scope of cross-examination. Cross-examination should be limited to the subject matter of the direct examination *and matters affecting the credibility of the witness.* The court may, in the

exercise of discretion, permit inquiry into additional matters as if on direct examination." (Emphasis added.)

In the case before us, nothing was more applicable to the subject of alibi covered by the defendant's direct examination than the existence of a receipt for the lunch which he testified was his alibi. Just how the prosecutor went into the inquiry was perfectly logical:

"Q. I know it is. Why do you remember the 5th, Mr. Roby?

"A. I don't remember for sure. I just saying I think we were eating up there at the Geyser Drive In.

"Q. Do you have any receipts or anything that would show that?

"A. Not for that day. *We* have got receipts a lot of the other days, but I don't think *we* have one for that date. (Emphasis added.)

"Q. You don't have a receipt for the 5th of January?

"A. No, sir.

MR. SIMONTON: May we approach the Bench, Your Honor?

(Counsel approached the Bench and a discussion was had out of the hearing of the jury.) (Counsel resumed their places in the Courtroom and the following was taken in the hearing of the jury.)

BY MR. SIMONTON:

"Q. Mr. Roby, have you ever seen a receipt?

MR. JONES: Objection, Your Honor. It's beyond the scope of direct.

THE COURT: Overruled.

BY MR. SIMONTON:

"Q. Have you ever seen a receipt from the Geyser Drive In in handwriting byone [sic] of the waitresses at the Geyser Drive In with January 5th on it?

"A. Yes, sir.

"Q. Where did you see that receipt?

"A. From my dad."

Then followed the testimony heretofore set out in this opinion. An unreported bench conference is a bad trial practice. In any event, when held as noted, it would have been appropriate and proper practice to remind the court that a receipt had been reported by the defendant at the pretrial conference, the State was not shooting from the hip and was not about to ask a question it would be unable to pursue.

When the defendant takes the stand, the State is allowed great latitude in cross-examination testing his credibility. *State v. Thompson,* 1973, 110 Ariz. 165, 516 P.2d 42. ▮▮▮ Witnesses, West's Digest System. It is well established that the scope of proper cross-examination may extend to the whole transaction of which the defendant has testified, or it may be employed to elicit any matter which may tend to overcome, qualify or explain the testimony given on direct examination. *People v. Dotson,* 1956, 46 Cal.2d 891, 299 P.2d 875. The defendant cannot adopt a strategy and at the same time preclude the State from testing its validity by cross-examination. *Commonwealth v. Williams,* 1974, 227 Pa.Super. 103, 323 A.2d 135. There is no authority that renders alibi testimony on the part of defendant immune from the probing search of cross-examination, and the State has a right to make such inquiry as will cast doubt upon the credibility of a defendant's alibi. *State v. Davis,* Mo.App.1975, 527 S.W.2d 32. Any fact which diminishes the personal trustworthiness of the defendant taking the stand in his own defense that is material and germane to the issue may be elicited on cross-examination. *State v. Robideau,* 1967, 70 Wash.2d 994, 425 P.2d 880, citing V Wigmore on Evidence, § 1368:

"I. The theory of cross-examination. 1. Proof by direct examination of the same witness, contrasted. The fundamental feature is that a witness, on his direct examination, discloses but a part of the necessary facts. That which remains suppressed or undeveloped may be of two sorts, (a) the remaining and qualifying circumstances of the subject of testimony, as known to the witness, and (b) the facts which diminish the personal trustworthiness of the witness." [5]

---

**5.** Wigmore's enlargement of (b), at page 37, is pertinent:

"(b) The *facts which diminish the personal trustworthiness or credit of the witness* will

The trial judge then, after properly exercising his discretion in receiving the facts elicited on cross-examination, left it to the jury to apply them for whatever effect they might have on the credibility of not only the defendant but his father as well. The jury was properly instructed that it was the jury's duty to determine the credibility of witnesses. It would be an unreasonable burden to require the State to do more than elicit the facts involving the receipt and, as the trial judge ruled, it was thereafter a question for the jury. Besides that, it would only be repetitious.

I agree with the court's disposition of the other assignments of error because of the likelihood they will arise during the course of a new trial. There is, however, one more point raised by the defendant in his brief in connection with the sufficiency of the evidence upon which this court has not spoken for many years and which should be enunciated for guidance because the question could likewise arise in any future trial of this case.

The defendant complains of the absence of corroboration of the testimony of the informer, Ring, and the absence of a proper cautionary instruction to the jury. There is no requirement that Ring's evidence be corroborated. This court has never directly ruled that a cautionary instruction must be given when an interested informer testifies, though that is the general rule. In a rather indecisive way, this court stated the rule to be that a cautionary instruction is "sometimes" given when "informers, detectives,

or other persons especially employed to hunt up evidence testified in the case." *Jenkins v. State,* 1913, 22 Wyo. 34, 134 P. 260, reh. den. 22 Wyo. 34, 135 P. 749. In that opinion, the court said that since no such individual had testified at the trial, the district judge was justified in not giving such an instruction. I would clarify the applicable rule.

In the record before us, it is shown that the trial judge did give a cautionary instruction.[6] The general rule is that:

"The testimony of an informer who provides evidence against a defendant for pay, or for immunity from punishment, or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by interest, or by prejudice against defendant."

1 Devitt and Blackmar Federal Jury Practice and Instructions, 3rd Ed., § 17.02 and cases there cited. For an excellent history of the rule, comparatively new, see *Fresneda v. State,* Alaska 1971, 483 P.2d 1011. That court wisely cautions that every person coming forward to aid in the apprehension of criminals should not be singled out for use of the instruction. See also, *Roquemore v. State,* supra; *Marshall v. State,* 1971, 87 Nev. 536, 490 P.2d 1056; and, *Todd v. United States,* 10th Cir. 1965, 345 F.2d 299. The instruction should be reserved for those who fall within its terms. I am satisfied that the concept was properly applied

---

also, in every likelihood, have remained undisclosed on the direct examination. These it is the further function of the opponent's examination to extract. Some of them, no doubt, could be as well or sometimes better proved by other witnesses. But many of them can be obtained only from the witness himself—particularly those which concern his personal conduct and his sources of knowledge for the case in hand. To this extent, again, cross-examination is vital, i. e., it does what must be done and what nothing else can do." (Footnotes omitted and emphasis in original.)

**6.** The court's Instruction No. 7:

"One who testified with a promise from the State that he will not be prosecuted is a competent witness. His testimony may be received in evidence and considered by the jury even though not corroborated or supported by other evidence.

"Such testimony, however, should be examined by you with greater care than the testimony of an ordinary witness. You should consider whether the testimony may be colored in such a way as to further the witness's own interest, for a witness who realizes that he may procure his own freedom by incriminating another has a motive to falsify. After such consideration, you may give the testimony of the promised witness such weight as you feel it deserves."

in this case. In my view, the trial judge fully protected the record by use of a strong cautionary instruction giving the jury every opportunity to discard the key testimony of Ring and acquit the defendant.

I would have affirmed the district court in every respect.

THOMAS, Justice, with whom RAPER, Justice, joins, dissenting.

I dissent from the majority opinion of the Court in this case, and I join in the dissenting opinion of Justice Raper. Justice Raper details the record facts which I would find to be controlling in this instance. These facts are ignored in the majority opinion, and this perhaps is demonstrative of a misapprehension of the record by the majority of the Court.

I would add some comments with respect to the law. The majority opinion apparently attaches some significance to the fact that the document in question was never introduced into evidence. "The fact that evidence was fabricated is admissible even though the evidence itself was not used." 1 Wharton's Criminal Evidence, § 218, p. 466 (13th Ed., The Lawyer's Cooperative Publishing Co. and Bancroft-Whitney Co., 1972). It is the conduct of a party or a witness in attempting to fabricate evidence that is relevant with respect to this issue, whether as part of a case-in-chief or as impeachment, and it is not important that the effort to impede justice is unsuccessful. *State v. Uhls,* 121 Kan. 587, 249 P. 597 (1926); *People v. Randall,* 294 Mich. 478, 293 N.W. 725 (1940).

My major differences with respect to the law as reflected in the majority opinion relate to an apparent identical treatment of the defendant and his father as witnesses, and the failure to distinguish between the utilization of evidence demonstrating the fabrication of evidence for purposes of proving a case-in-chief and for purposes of impeachment. It is clear, even from the cases reflected in the majority opinion, that so far as the father's appearance as a witness is concerned his causing the receipt from the Geyser Drive-In to be dated on the date of this alleged offense properly was available for purposes of impeachment and there was nothing improper about the cross-examination of the father relative to this document. The matter is for the jury to consider insofar as these facts may affect the father's credibility.

The majority opinion treats the cross-examination of the defendant as being for all purposes the same as using this information in the case-in-chief against him. Therefore, the majority espouses the rule that it is necessary to lay a foundation connecting the defendant with the fabrication of the evidence prior to asking him about it. The effect of such a requirement is of course to foreclose the cross-examination of any defendant about such matters. The myriad of objections which could be lodged to an attempt to cross-examine a defendant as a witness with respect to his involvement with third parties who fabricate evidence on his behalf would seem to prevent such an effort beyond all question. The situation of the cross-examination as distinguished from case-in-chief is, however, distinguishable because such information when presented in cross-examination relates only to the credibility of the defendant as a witness. The state having rested its case, it well might be improper to offer such evidence for any purpose other than impeachment at this stage of the trial. If requested, a limiting instruction would be appropriate.

The majority opinion seems to agree, and properly so, that a defendant is to be treated as any other witness if he elects to take the stand and testify. Under such circumstances it is permissible to cross-examine the defendant about fabrication of evidence without laying the foundation connecting him to that event which is required if it is to be established as part of the prosecution's case-in-chief. The authorities in point so hold. *Corothers v. State,* 75 Ark. 574, 88 S.W. 585 (1905); *State v. Thornhill,* 188 La. 762, 178 So. 343 (1937); *State v. Childers,* 165 La. 622, 115 So. 802 (1928); *Bates v. Holladay,* 31 Mo.App. 162 (1888); *State v. Deal,* 52 Or. 568, 98 P. 165 (1908); *Jenkins v. State,* Tex.Cr.App., 484 S.W.2d

900 (1972); *Martineau v. May,* 18 Wis. 54 (1864). Consequently, the correct disposition of this case under pertinent authorities is that it was not error for the prosecuting attorney to cross-examine the defendant relative to the fabrication of the receipt from the Geyser Drive-In. Obviously, if the county attorney could not connect the defendant with that event, his efforts would be futile, and in all likelihood counter-productive.

As noted earlier, Justice Raper has spelled out the record facts which in his judgment and mine are sufficient to at least create a jury question as to whether this defendant was involved in the preparation and utilization of this fraudulent exhibit. For me it is highly unlikely that this occurred without the defendant's knowledge. From the defendant's own answers it might reasonably be concluded that the receipt was altered with his knowledge, and that he acquiesced in the effort at least to the point of submitting the document as a proposed exhibit at the pre-trial conference.

With respect to such efforts on the part of third parties, I think my view of such a situation is aptly captured by Professor Wigmore in the following statement:

"In thus connecting it with the party, it is to be noted, on the one hand, that no mere technical theory of agency will suffice to charge him; for it is not a question of legal liability, but of actual moral connivance. On the other hand, no mere technical deficiencies of proof should be allowed to exonerate him; due regard to the common probabilities of experience should be paid. For example, if a witness has been suborned by B, a clerk in the defendant's bank, it is idle to argue that such a clerk has no implied authority to tamper with witnesses, and therefore that some conversation or letter of the defendant, expressly authorizing B's errand, must be proved. Why should B meddle in such fashion, except upon some hint or order from the defendant? The relation between the two, together with common experience, should suffice to admit the fact, leaving to the defendant the opportunity to exculpate himself, as he easily could if innocent of any share. The common probabilities of such cases cannot be ignored; and it is better to admit such facts in the fair certainty that an innocent party can protect himself, than to exclude them by requiring such a degree of connecting proof as practically gives a general immunity to fraud and chicanery. Most Courts exhibit an undue tenderness for technicality in dealing with such evidence, and shut their eyes, with solemn pretence, to that which every one must believe to be deserving of strong suspicion." 2 Wigmore on Evidence, § 280, pp. 128–129 (3d Ed., Little, Brown and Company, 1940).

In this instance, even adopting the standard for foundation for utilization of such evidence as part of the case-in-chief to demonstrate guilty knowledge, the record is adequate to make a jury question. Under those circumstances, it could not be error for the prosecutor to cross-examine with respect to this issue. The trial court was quite correct in ruling that the evidence concerning a meal receipt was within the province of the jury.