James **PEARSON**, Petitioner,

v.

**STATE of Wyoming, Respondent.**

No. 92–59.

Supreme Court of Wyoming.

April 2, 1992.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, for petitioner.

Joseph B. Meyer, Atty. Gen., and Sylvia L. Hackl, Deputy Atty. Gen., for respondent.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

ORDER DENYING PETITION
FOR CERTIORARI

This matter came on before the Court upon a Petition for Certiorari, seeking review of a decision of the District Court of the Seventh Judicial District of Natrona County, and a Motion for Leave to Proceed in Forma Pauperis on behalf of Petitioner, and the Court having carefully considered the Petition for Certiorari, the Motion for Leave to Proceed in Forma Pauperis, and the record and files of the Court, and being fully informed, finds that the Motion for Leave to Proceed in Forma Pauperis should be granted and the Petition for Certiorari should be filed without payment of the docketing fee and the Petition for Certiorari should be denied and it, therefore, is

ORDERED that the Motion for Leave to Proceed in Forma Pauperis be, and the same hereby is, granted and the Petition for Certiorari should be filed without payment of the docketing fee, and it further is

ORDERED that the Petition for Certiorari be, and the same hereby is, denied.

URBIGKIT, C.J., would have granted the Petition for Certiorari and dissents with opinion from the Order Denying Petition for Certiorari.

URBIGKIT, Chief Justice, dissenting.

I respectfully dissent from this denial of a petition for writ of certiorari on the initial basis of constitutionality, but otherwise amplified for disagreement under the most disturbing factual situation presented.

This court sweeps the large kernels of abject prosecutorial misconduct under the rug of "see no evil" by refusal to face the travesty of judicial process with open and active examination of the actual trial occurrence.

In first position, I find the denial of any right of appeal in post-conviction-relief proceedings to violate the Wyoming Constitution no matter what the day-by-day changes in mood and mode of the United States Supreme Court might provide as their current idea of how to confine rights under the United States Constitution. Wyo.Const. art. 6, § 20, providing for our oath of office, in application of Wyo.Const. art. 1, § 6, due process of law; art. 1, § 7, no absolute arbitrary power; art. 1, § 8, open courts; art. 1, § 9, trial by jury inviolate; and art. 1, § 10, right of accused to defend, determined for me that we should give a right of appeal from denied consideration of constitutional rights which the legislature determined initially to be enforceable and protected under the processes of Wyo.Stat. § 7–14–101 through § 7–14–108 as the Wyoming post-conviction-relief statute. *See* Robertson, *The Needle in the Haystack: Towards a New State Postconviction Remedy*, 41 DePaul L.Rev. 333 (1992).

This case provides more cause for worry in the current decision than the generic potential for denial of justice by a casual rejection of a right to appeal where a constitutional interest is to be protected. Here we have prosecutorial misconduct absolved by judicial acceptance initially involving a serious misstatement of fact for jury presentation almost reaching the context that the attorney deliberately lied to the jury in utilization of known untrue and suggestive misstatements.

In a case where innocence is as likely as not, I again dissent as I did in the original appeal, *Pearson v. State*, 811 P.2d 704

(Wyo.1991), but this time in constitutional disapproval and aversion to what is more than significant prosecutorial misconduct. How can this court expect public acceptance and approval of the justice delivery system if we fail to even enforce Rule 3.3 of the Rules of Professional Conduct for Attorneys at Law by reversal of a criminal conviction obtained in its intended violation?

(a) A lawyer shall not knowingly:

\* \* \* \* \* \*

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

Rule 3.3, Rules of Professional Conduct for Attorneys at Law.[1]

I could be more sensitive to our present status if the decision of the trial court had made a reasonable decision in denial of the petition for post-conviction relief where the documented complaint in that proceeding was prosecutorial misconduct by intentionally prejudicing the jury through falsely creating an impression of fact where the prosecutor had no underlying evidence and actually knew the inferred fact to be untrue. Trial court dismissal for failure to state a claim in the face of this contention leaves something far removed from rational judicial disposition.

The second basis stated by the trial court for denial of the petition is even more disturbing. The trial court discerned in deci-sion that the petition raised an issue which had been previously adjudicated. This conclusion is just totally lacking in factual basis and is directly untrue. This court at an earlier stage in denial of the motion to supplement the record directly rejected in an adjudicative request by the defendant on this issue and we continue yet to this date to be apparently disinclined to even consider this prosecutorial violation of the Canon of professional conduct and constitutional right of the defendant to due process.

In the petition to this court, petitioner clearly and correctly analyzed the status of this proceeding and its authenticated constitutional perspective:

20. Petitioner contends that this ruling was erroneous, for the reasons stated below:

(a) The Petition should not have been dismissed for failure to state a claim upon which relief may be granted. Petitioner claimed prosecutorial misconduct and presented aff[i]davits that not only was the elicited testimony untrue, but that Mr. Crank knew Mr. Whitney's answer was false and did nothing about it. If this were true, that is an independ[e]nt ground[ ] for reversal. To deny the Peti[ ]tion is to find the affidavits of Mike Cornia and John Whitaker false. To find their affidavits false without a hearing is to make a factual finding contrary to petitioner without eliciting evidence.

(a) A prosecutor should not knowingly offer false evidence, whether by documents, tangible evidence, or the testimony of witnesses, or fail to seek withdrawal thereof upon discovery of its falsity.

(b) A prosecutor should not knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury offer inadmissible evidence, ask legally objectionable questions, or make other impermissible comments or arguments in the presence of the judge or jury.
*Id.*
*Standard 3–5.7 Examination of Witnesses*
\* \* \* \* \* \*
(d) A prosecutor should not ask a question which implies the existence of a factual predicate for which a good faith belief is lacking.
*Id.*

---

1. The Standards for Criminal Justice (1992) (50 CrL 2061) relate to the impropriety of what the *prosecutor did in this case* when he conjectured a known untrue fact in examination of a critical witness by the following rule preclusions:
   *Standard 3–1.2   The Function of the Prosecutor*
   (a) The office of prosecutor is charged with responsibility for prosecutions in its jurisdiction.
   (b) The prosecutor is an administrator of justice, an advocate, and an officer of the court; the prosecutor must exercise sound discretion in the performance of his or her functions.
   (c) The duty of the prosecutor is to seek justice, not merely to convict.
   *Id.*
   *Standard 3–5.6 Presentation of Evidence*

(b) This Petition does not raise an issue that has been previously adjudicated and is not procedurally barred. The majority of the Wyoming Supreme Court did not rule on the issue. In fact, the majority denied Petitioner's Motion to Supplement the Record and to Brief a New Issue. Counsel attempted to raise this issue but was foreclosed from supplementing the record. This issue has not been decided on its merits or on procedural grounds. Only the dissent by Justice Urbigkit in *Pearson v. State* [811 P.2d 704 (Wyo.1991)] considered the issue of prosecutorial misconduct and he would have had an evidentiary hearing in the lower court to investigate it further. This is the minimum remedy sought by Petitioner. Petitioner also asserts that the undisputed facts show an intentional misleading of the jury requiring a reversal of the conviction.

In his trial court brief, petitioner again states:

**I. As a matter of due process and fair trial, the prosecutor has a duty not only to refrain from presenting fake testimony but also to correct false testimony, in order to avoid leaving a false impression of the facts with the jury.**

The prosecutor in a criminal trial has a constitutional duty to correct false testimony. The Supreme Court first held that a prosecutor's use of false testimony could constitute a violation of due process in *Mooney v. Holohan*, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). The defendant alleged that the prosecutor had procured and introduced at trial perjured testimony, thereby fabricating the case against him. The Supreme Court found that this had constitutional dimensions:

> "[Due Process] is a requirement that cannot be deemed to be satisfied by mere notice and hearing if a state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by a state to procure the conviction and imprisonment of a defendant is as inconsistent with the rudimentary demands of justice as is the obtaining of a like result by intimidation."

*Mooney v. Holohan, Id.* [294 U.S.] at 112 [55 S.Ct. at 342].

*Mooney* involved a knowing and intentional use of perjured testimony that related directly to the defendant's commission of the offense charged. Subsequent Supreme Court rulings have established that *Mooney* was not limited to perjury suborned by the prosecutor nor perjured statements that dealt with a substantive element of the prosecution's case. The Supreme Court has further extended the *Mooney* principle in that it's not even to be limited to testimony known by the prosecutor to be false, provided the prosecutor should have had that knowledge. The Supreme Court extended the *Mooney* principle in a series of cases. *Alcorta v. Texas*, 355 U.S. 28, 78 S.Ct. 103, 2 L.Ed.2d 9 (1963 [1957]), *Napue v. Illinois*, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), and *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

\* \* \* \* \* \*

**II. It is improper for a prosecutor to prejudice the jury by falsely creating an impression of fact where he has no underlying evidence.**

It is improper for prosecutors to attempt to create an impression on the jury by innuendos in questions when no supporting evidence exists. By asking questions that have no basis in fact the prosecutor can leave in the minds of the jurors damaging and prejudicial but false and inadmissible ideas.

The Wyoming Supreme Court has confirmed that the prosecutor's attempt to leave the jury with the insinuation of improper conduct on the part of the defendant without factual support is improper. In *Roby v. State*, the Wyoming Supreme Court found that the prosecutor's tactic was improper and grounds for reversal. *Roby v. State*, 587 P.2d 641, 644 (Wyo.1978). In *Roby* the defen-

dant was convicted of delivering a controlled substance. On appeal the defendant argued that he was denied a fair trial by reason of certain prosecutorial improprieties, and that the evidence was insufficient to sustain the conviction. The defense was based on an alibi to the effect that the defendant was not at home but was having lunch at a drive-in with his father and a friend at the time of the alleged offense. The prosecutor cross-examined the defendant and Roby's father concerning the existence of a lunch receipt for the day of his alibi. Roby's testimony on cross-examination showed that his father had taken a receipt to the Drive–In and had it dated for the day of his alibi, but the defense had decided not to use the receipt. Roby denied having anything to do with having the receipt so dated. Roby's father later testified that he had the receipt dated for income tax purposes. The receipt was never introduced into evidence. The Wyoming Supreme Court found the cross-examination to be improper because the prosecution attempted to impeach Roby and his father without competent evidence. It was found improper for the prosecution to leave the jury "with an inference of such conduct on the part of [Roby] under the guise of impeachment, without substantiating it by evidence tending to prove that [Roby] in fact attempted such fabrication." *Id.* The Court expanded on this duty when it stated "where the question posed is highly prejudicial with regard to its implications, a duty devolves upon the examiner to then offer evidence showing the factual predicate if the response of the witness is unfavorable." *Id.* The Court found the prosecutor's examination affected a material issue because the fabrication of evidence of Roby's alibi could be evidence of guilt, thus the prosecutor was charged with establishing the factual predicate for this course of examination. The prosecutor failed to do this and left the jury with the mere insinuation of improper conduct on Roby's part. "The prosecutor's tactic cannot be sanctioned upon the ground that the examina-

tion was aimed at testing the defendant's credibility, because there was a failure to support the insinuations with competent evidence." *Id.* at 645. The Court found reversible error because of the examination, thereby requiring a new trial.
(Emphasis in original.)

It is not alone that justice is undone in the appellate proceeding for the guilt determination of James Pearson. It is in addition that he has never been given even a rational and real opportunity for the issues to be considered and the proper constitutional perspective applied. Consequently, I again, in serious and thoughtful concern, dissent from this denial of access to justice by present decision of this court to reject review of the presented prosecutorial misconduct claim.