**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Donald E. MEEKER,**
**Defendant-Appellant.**

No. 76–1878.

United States Court of Appeals,
Seventh Circuit.

Argued April 12, 1977.

Decided July 26, 1977.

As Amended on Denial of Rehearing
Sept. 28, 1977.

---

5.   Circuit Rule 18 shall be applied by the district court on remand.

**388**

Harlan Heller, Mattoon, Ill., for defendant-appellant.

Warren E. White, Asst. U. S. Atty., Danville, Ill., for plaintiff-appellee.

Before TONE and BAUER, Circuit Judges, and JAMESON, Senior District Judge.*

BAUER, Circuit Judge.

Meeker asks us to overturn his conviction for failing to report income on his 1970 individual and corporate income tax returns. He argues that the prosecutor's repeated use of improper and prejudicial questions in examining witnesses before the jury denied him a fair trial. We reverse.

Meeker was charged with failing to report gross receipts of his sole proprietorship and wholly owned corporation for the 1970 tax year. The Government presented evidence at trial of $167,741.92 in receipts defendant received on behalf of his proprietorship that he failed to report on his 1970 individual income tax return, and $94,972.04 in receipts he received on behalf of his corporation that he failed to report on his 1970 corporate income tax return.

Meeker bases his appeal on four questions the prosecutor asked of witnesses at trial. Objections to each of the questions were sustained, and the jury was instructed to disregard each.[1] The defendant argues that the cumulative effect of the questions was so prejudicial that he was denied a fair trial.

The first challenged question was asked on redirect examination of Bernadine Rennels, a former bookkeeper of the defendant. The prosecutor asked Mrs. Rennels,

"Do you recall Mr. Meeker commenting to you that he always is going to owe additional tax because he takes questionable deductions and things like this?"

■ This question is improper both as to form, being a leading question on redirect examination, and as to substance. The

manifest implication of the question—that Meeker told his bookkeeper that he underpaid his taxes by taking questionable deductions and "things like this"—was not supported by evidence the prosecutor was prepared to present, and such evidence was, at best, of questionable admissibility. It is axiomatic that an attorney, and a prosecutor in particular, should not allude to matters that he has no reasonable basis to believe are relevant to the case or that will not be supported by admissible evidence. ABA Code of Professional Responsibility DR7–106(c); Am. C. of Trial Lawyers Code of Trial Conduct ¶ 4(c). This rule is, of course, directed in particular toward matters that are prejudicial to an opponent's case, as was the statement here.

The prosecutor admitted at oral argument before this Court that he had no prior knowledge that Meeker had made such a statement to his bookkeeper. His only basis for the question was a statement Meeker had made to an IRS agent; a statement which, if admissible, would not support the implication in the prosecutor's question.

■ In the second challenged question, the prosecutor asked David Dillon, an accountant who had prepared the defendant's returns for 1970 and 1971,

"In layman's terms regarding January 1, 1966, can you tell the jury how much unreported gross receipts the IRS audit discovered at that time?"

This question left the jury with the impression that Meeker had previously failed to report gross receipts. Such an implication is, of course, highly prejudicial to the defendant because the jury might infer from the implication of past illegal behavior that the defendant is more likely to have committed the crime for which he is presently standing trial. Given the possibility of the jury drawing this inference, evidence of such prior misconduct is admissible only if offered to prove such matters as motive,

---

* The Hon. William J. Jameson, United States District Court for the District of Montana, is sitting by designation.

1. Defense counsel also moved for a mistrial after each question. All four mistrial motions were denied.

opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. Federal Rule of Evidence No. 404(b); see *United States v. Fearns*, 501 F.2d 486, 490–91 (7th Cir. 1974). In this instance, the question was not asked for a purpose sanctioned by Rule 404(b). The Government explains that the question was asked merely to help explain the background for a figure on Meeker's 1970 individual income tax return. The highly prejudicial prior misconduct implication was unnecessary for such a purpose.

Moreover, the implication was false. The IRS did *not* determine that Meeker failed to report gross receipts in 1966. Rather, Meeker became liable to the IRS in 1966 for the tax on a substantial amount of his gross receipts as a result of the IRS's imposition of a change in Meeker's tax accounting procedure from the cash to the accrual method.[2] To characterize the advancement of the payment of previously deferred tax liability as unreported gross receipts is an inexcusable distortion of the facts.

The Government asked the third question during the redirect examination of Robert E. Jenkins, an IRS agent who examined Meeker's accounting records. The prosecutor asked the agent,

"His real method of accounting was not to report income, wasn't it?"

■ As the Government conceded in its brief, this question was also improper. It constituted a leading question of a prosecution witness that contained an implication that the defendant was guilty of engaging in the conduct for which he was on trial. Such an inflammatory statement on the part of a prosecutor is never permissible.

Finally, the Government asked Meeker on cross-examination, referring to an accountant who had prepared returns for Meeker,

"Did he tell you that he would refuse to file a final return for you in 1969?"

The prejudicial implication in this question called for inadmissible opinion evidence

that was not relevant to any aspect of the case, which only involved Meeker's 1970 tax returns.

In propounding these questions, the prosecutor "overstepped the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense." *Berger v. United States,* 295 U.S. 78, 84, 55 S.Ct. 629, 631, 79 L.Ed. 1314 (1935). Like the prosecutor censured in *Berger,* the prosecutor here was guilty of

> "misstating the facts in his cross-examination of witnesses; of putting into the mouths of such witnesses things which they had not said; . . . [and] of assuming prejudicial facts not in evidence." *Id.*

There is no excuse for such conduct on the part of an officer of the United States, and we hereby reprimand the prosecutor involved in this case for engaging in such behavior. He should heed well the Supreme Court's declaration in *Berger* of the extra burden a prosecuting attorney bears in presenting his case:

> "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Id.* at 88, 55 S.Ct. at 633.

---

**2.** The IRS permitted Meeker to spread out over a ten-year period the gross receipts that became taxable at the time Meeker started reporting income on an accrual basis. Ten per-

cent of those gross receipts were reported on his 1970 individual tax return, and the question in dispute arose during consideration of that figure on Meeker's 1970 return.

Having found the questions improper, we must decide whether they constituted grounds for reversal. Despite the sustaining of the defense's objections and the judge's admonitions to the jury to disregard each question, we find the questions propounded to have been so prejudicial to the defendant that we cannot deem them harmless.

We note three particular reasons for our finding. First, the questions invited the jury to convict Meeker on facts outside the record, some of which were patently untrue, and others of which were not admissible at trial.

> "The prejudice to a defendant of inviting conviction on facts—if they be such—dehors the record is counter to the basic concept of fairness." *United States v. Grossman,* 400 F.2d 951, 956 (4th Cir.), *cert. denied,* 393 U.S. 982, 89 S.Ct. 453, 21 L.Ed.2d 443 (1968).

Second, coming from the mouth of the representative of the United States, of whom the average jury expects the fairness and impartiality mentioned in *Berger,* such prejudicial questions "carry much weight against the accused when they should properly carry none." *Berger v. Unitd States, supra,* 295 U.S. at 88, 55 S.Ct. 633.

Finally, as in *Berger,*

> "we have not here a case where the misconduct of the prosecuting attorney was slight or confined to a single instance, but one where such misconduct was pronounced and persistent, with a probable cumulative effect upon the jury which cannot be disregarded as inconsequential." *Id.* at 89, 55 S.Ct. at 633.

A new trial shall be granted.

Reversed and remanded.