**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**James A. FITZSIMMONS,**
**Defendant-Appellant.**

No. 81–2278.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1982.

Decided July 26, 1983.

Harvey M. Silets, Silets & Martin, Chicago, Ill., for defendant-appellant.

Joseph Duffy, Asst. U.S. Atty., Dan K. Webb-U.S. Atty., Chicago, Ill., for plaintiff-appellee.

* The Honorable John R. Bartels, Senior United States District Judge for the Eastern District of New York, sitting by designation.

Before BAUER and POSNER, Circuit Judges, and BARTELS, Senior District Judge.*

BARTELS, Senior District Judge.

This is an appeal from a judgment of conviction after a jury trial before the Honorable Thomas R. McMillen.

James A. Fitzsimmons appeals from a judgment entered in the United States District Court for the Northern District of Illinois, Eastern Division (Thomas R. McMillen, *Judge*), after a jury trial, convicting him of three counts of willfully and knowingly making and subscribing tax returns for the years 1975, 1976, and 1977 which he did not believe to be true and correct, in violation of 26 U.S.C. § 7206(1).

Appellant's principal arguments on appeal are: (1) the court did not adequately instruct the jury as to the meaning of "willfully," as that term has been defined by the United States Supreme Court, and (2) the closing arguments of the prosecutor misstated critical evidence and improperly stated the effect of other evidence. Finding no merit in these contentions, we affirm.

Appellant, a dentist for approximately 33 years, claims he acted in good faith and not willfully in filing false tax returns for 1975, 1976, and 1977. For approximately 20 years, including the years in question, appellant had employed an accounting firm to prepare his tax returns. The firm prepared these returns from data he furnished them on pre-printed interview sheets which they supplied. On these sheets he provided them with information regarding his yearly income, expenses and deductions. They then transferred this information onto his final returns. Every client, including Fitzsimmons, received a cover letter from the accountant explaining these pre-interview worksheets. At the same time the accountant held himself available to discuss the client's questions.

Throughout the years in question, appellant kept meticulous records of every patient seen on a daily basis, including the work done, the amount of time spent, and the amount of the charge. He also kept a day sheet record of every patient seen, and all money received on a daily basis, the totals from which were placed on a monthly summary card. In turn, the totals from the monthly summary cards would be placed on a yearly recapitulation sheet. Most of this bookwork was done by appellant's assistant and bookkeeper of 28 years, Antoinette Potapczik. During this time appellant gave discounts, which amounted to free services, to nuns, priests, his assistant and members of her family, and members of his own family and recorded the value of "lost" time caused by patients who failed to keep appointments. The value of such services was not charged but was placed in a "discount" column on the day sheet. In addition, appellant rendered free service to certain paying patients who needed additional work on jobs he had previously performed. The value of these "lost" services he would sometimes record on his day sheet without charging the patients.

Based upon his losses from "discounts," "no charge," and cancelled appointments, appellant deducted from his gross receipts (i) $20,000 in 1975; (ii) $22,000 in 1976; and (iii) $23,000 in 1977 before listing those figures on his pre-interview worksheet. As a result, he listed on his 1975 worksheet gross receipts of $113,079.68; on his 1976 worksheet, gross receipts of $123,443.56; and on his 1977 worksheet, gross receipts of $127,168.00. The flaw in these figures is that they represent gross receipts for the years in question after Fitzsimmons had deducted therefrom services he rendered free and upon which he placed his own value. Appellant never told his accountant that he had been deducting these amounts from his gross receipts. Consequently these figures were used on his final returns.

Upon an audit of appellant's books in September 1978 the Internal Revenue Agent discovered that appellant had deducted from his gross receipts the following amounts: $20,541 for 1975, $22,797 for 1976, and $24,488 for 1977. Thereafter, in October 1980, appellant filed amended returns showing the additional gross receipts for the years in question.

Appellant claims he was acting in good faith throughout and did not think it was necessary to inform his accountant of these deductions.

### Discussion

Section 7206(1), 26 U.S.C., provides that any person who "willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter," is guilty of a felony and may be fined or imprisoned or both. There is no question that the Government must establish, beyond a reasonable doubt, that the defendant "willfully" subscribed to a false tax return. This requires proof that appellant knew that he was violating a "known legal duty." *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 *reh. den.*, 429 U.S. 987, 97 S.Ct. 510, 50 L.Ed.2d 600 (1976); *United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973).

■ At the trial appellant's counsel tendered to the district court Instruction 23.[1]

1. Taken from the Seventh Circuit *Federal Criminal Jury Instructions* (West Publishing Co. 1980) § 6.03, and reading as follows:

As used in this statute, the word willfully means voluntary, purposeful, deliberate and intentional, as distinguished from accidental, inadvertent or negligent. An act is done willfully if done voluntarily, deliberately and purposefully and with a specific intent to do that which the law forbids.

It is necessary, therefore, that the Government prove beyond a reasonable doubt that the defendant specifically intended to prepare and sign his tax returns with knowledge that his tax returns were not true and correct as to every material matter.

The defendant's conduct is not willful if the income was omitted from his returns because of accident, mistake, inadvertence, or due to

The first paragraph of that instruction provides the definition of "willfulness"; the second paragraph explains proof that is required of specific intent with knowledge that the tax returns were false; and the third paragraph describes the circumstances under which the defendant's conduct would not be deemed willful. No objection was interposed by the prosecution and the court at first agreed to read Instruction 23 as tendered. But subsequently the court stated that the instruction appeared repetitive and, finally, only read to the jury the last paragraph of Instruction 23 after reading almost through the first paragraph and then telling the jury to strike it. Appellant claims that by the failure to read Instruction 23 in full the jury was not properly instructed on the question of "willfulness" and that this failure was a *per se* error.

A perusal of the instructions as a whole shows that the court did cover the information in the two omitted paragraphs by other specific instructions. For instance, the court instructed the jury that the crime charged required "specific intent" which, in turn, required proof that "the defendant knowingly did an act which the law forbids, purposely intending to violate the law"; that "knowingly" meant that "the defendant realized what he was doing and was aware of the nature of his conduct"; and that "willfulness requires proof of a specific intent." The court added that it was necessary "that the Government prove beyond a reasonable doubt that the defendant specifically intended to prepare and sign his tax returns with knowledge that his tax returns were not true and correct as to every material matter" and explained that the Government must prove that the defendant knew that his tax return was not true and that he acted willfully. Finally, the court clearly outlined the defense theory of the case to the jury by cautioning the jury that the defendant's conduct would not be willful if he omitted the income from his returns due to "accident, mistake, inadvertence, or due to a good faith misunderstanding as to the requirements of the law."

a good faith misunderstanding as to the re-

While it might have been preferable for the trial judge to have read all three paragraphs of Instruction 23 as tendered by the defense, we believe that the actual instructions given by Judge McMillen were adequate. He was careful to point out that "willfully" meant "deliberate and intentional" conduct, as distinguished from careless or negligent conduct. *United States v. Pomponio, supra; United States v. Bishop, supra; United States v. Falk,* 605 F.2d 1005 (7th Cir.1979), *cert. denied,* 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980).

■ Appellant further charges that the court's instructions were confusing and incomplete although he made no timely objection to them as required by Rule 30 of the Federal Rules of Criminal Procedure. *United States v. Jackson,* 569 F.2d 1003 (7th Cir.), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3096, 57 L.Ed.2d 1137 (1978). To obviate this failure, appellant asserts that the judge's defective instructions fall within the category of plain error under Rule 52(b), Fed.R.Crim.P. We cannot conclude, assuming that there was an error, in viewing the instructions as a whole (*United States v. Hamilton,* 420 F.2d 1096 (7th Cir. 1970)), that the omission of the paragraphs in question affected the substantial rights of the defendant. Appellant mistakenly relies upon *United States v. Barclay,* 560 F.2d 812, 815 (7th Cir.1977), as authority for his position. In that case the jury was not properly advised regarding the specific intent necessary to commit the crime, the lower court having rejected the traditional distinction between "general intent" and "specific intent." Here, the court was careful to make that distinction to which it added the necessity to prove willful conduct.

■ As his second ground for appeal appellant charges that the prosecutor misstated critical evidence and argued improper inferences in his closing arguments. The statements claimed to be offensive were statements referring to the accountant's testimony. Speaking generally of his

quirements of the law.

clients, the accountant, Donald Friedman, testified that some of his clients did not want to know whether or not certain items were deductible from their income tax returns if the answer would work against them. Commenting upon that testimony, the prosecutor stated that Friedman's clients did not want to know that they were doing wrong and that "[p]eople like to hide things from their accountant." We believe that such an inference was permissible (*United States v. McPartlin,* 595 F.2d 1321, 1360 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979)) and was not prejudicial considering the generality of its application.

■ The next objection to the prosecutor's remarks in closing concern the prosecutor's statement that "Dr. Fitzsimmons doesn't like to pay his taxes . . . he is late in paying his taxes and sometimes doesn't even pay his estimated taxes." In this connection, the prosecutor mentioned the fact that Fitzsimmons obtained a loan of $69,000 to pay taxes, interest and penalties for late filings of income tax returns for 1971 through 1974. As a matter of common knowledge, people do not like to pay their taxes and the accountant did testify, as stated by the prosecutor, that appellant had been late in paying some of his taxes and did obtain the loan in question. Viewed in its proper context, we do not believe that the prosecutor overstepped the grounds of propriety and fairness, *United States v. Meeker,* 558 F.2d 387 (7th Cir.1977), or that his arguments or inferences were unsupported by the evidence.

For the above reasons, the judgment should be affirmed.